COMMONWEALTH of Pennsylvania,
Appellee,

v.

Brian RANDALL, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 24, 2000.

Filed Aug. 1, 2000.

Mitchell S. Strutin, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOHNSON, J., CERCONE, President Judge Emeritus, and OLSZEWSKI, J.

CERCONE, President Judge Emeritus:

¶1 Appellant Brian Randall appeals from the judgment of sentence of life imprisonment imposed after his second trial by jury in which he was convicted of the offenses of first degree murder and possession of an instrument of crime.[1, 2] After careful review, we affirm.

¶2 The relevant factual circumstances adduced at Appellant's second trial, which was held in the Philadelphia Court of Common Pleas from December 14 to December 17, 1998, were cogently set forth by the Trial Court in its opinion as follows:

[Prosecution witness] Kuwayne El testified that he got into [Appellant's] car at approximately 9:00 p.m. on September 6, 1996, to get a ride to North Philadelphia to buy marijuana. (N.T. [Trial,] 12/15/98:6–8). The [Appellant] was driving the car, and Anthony Grant, the decedent, was in the passenger seat when Mr. El got into the back seat of the car. (N.T. 12/15/98:7–8). The three of them went to [the corner of] 9th and Indiana and bought $10.00 worth of marijuana. (N.T. 12/15/98: 9–10). After they purchased the marijuana, the three men drove to the Nicetown section of Philadelphia. (N.T. 12/15/98: 12). Mr. El started smoking a "blunt"[3] while they were driving. (N.T. 12/15/98:12) The [Appellant] pulled the car over by Stenton Park, which is located at the 4600 Block of 16th Street, and the three men got out of the car. (N.T. 12/15/98: 13). Mr. El testified that the [Appellant] pulled the car over because the car was filled with smoke. (N.T. 12/15/98:13).

Mr. El, the [Appellant, and] ... the decedent, stood in a circle while they smoked the marijuana. (N.T.12/15/98: 14–15). Mr. El testified that the decedent was standing about ten feet to his right, and the [Appellant] was standing to the right of the decedent. (N.T. 12/15/98: 17–19). The three men passed the blunt around. (N.T. 12/15/98: 20). While Mr. El was smoking the blunt, he suddenly heard three gunshots and then he saw the decedent lying on the ground. (N.T. 12/15/98: 21). Mr. El saw the [Appellant], with a gun in his hand, walk back to the car. (N.T.

---

1. 18 Pa.C.S.A. § 2502(a) and 907(b) respectively.

2. Appellant's first trial resulted in a hung jury.

3. A "blunt" is a hollowed out cigar filled with marijuana. N.T. Trial, 12/15/98, at 10–11.

12/15/98:22). Mr. El then left to walk home; he did not get back into the car with the [Appellant] because he was afraid that the [Appellant] would shoot him as well. (N.T. 12/15/98:25).

At approximately 10:00 p.m. on September 6, 1996, Officer Holt of the 35th Police District was on his regular patrol when he received a call reporting gunshots in Stenton Park. (N.T. 12/14/98: 44–46). As Officer Holt approached Stenton Park, several people, who were waiting for the police, directed him to the body of a black male, lying face down, "bleeding profusely from the head." (N.T. 12/14/98: 47). Officer Holt saw that the body was motionless and believed that the decedent was already dead. (N.T. 12/14/98: 48). When the medics arrived, they pronounced the decedent dead. (N.T. 12/14/98: 50). When [the officer] found the body, it was lying on a diagonal angle, head on the sidewalk, pointing towards the Northeast. (N.T. 12/14/98). The officer also stated that he saw two (2) .45 cartridge casings, which were placed on a property receipt, about 6 to 10 feet east of the decedent's body. (N.T. 12/14/98: 57).

Police Officer Mohammed Abdur–Rahim from the Firearm's Identification Unit, an expert in the area of firearms identification and ballistics, testified that he examined the ballistics recovered in connection with this homicide and determined that they were fired from the same gun. (N.T. 12/16/98: 40, 43, 50).

Dr. Carolyn Rivercomb, assistant medical examiner for the city of Philadelphia supervised the autopsy of Anthony Grant. (N.T. 12/16/98:7). She testified that there were three gunshot wounds that entered the right side of the head and exited on the left side of his face and neck. (N.T. 12/16/98: 11). There was no evidence of gunpowder or soot on the skin surrounding the wound or within the wound, indicating that the gun was not fired from within close-range. (N.T. 12/16/98: 16–17). Dr. Rivercomb concluded that the cause of death was multiple gunshot wounds to the head and neck and that the manner of death was homicide. (N.T. 12/16/98: 29).

Trial Court Opinion, filed 1/30/99, at 2–4.

¶ 3 As indicated, *supra*, at the conclusion of his jury trial, Appellant was found guilty on all charges and sentenced to life imprisonment. Trial Counsel did not file posttrial motions. Thereafter Appellant filed a *pro se* Notice of Appeal. New counsel, who currently represents Appellant, was appointed to represent Appellant in his direct appeal.

¶ 4 On appeal to our Court Appellant presents six (6) issues for our consideration:

I. Whether the defendant is entitled to an arrest of judgment because the evidence is insufficient to sustain the verdict of guilty as to murder of the first degree.

II. Whether the defendant's claim that he is entitled to a new trial as a result of the trial court's error in allowing the Commonwealth to present the testimony of Assistant District Attorney Richard Sax concerning the demeanor and credibility of Commonwealth witness Kuwayne El at the preliminary hearing.

III. Whether the defendant is entitled to a new trial as a result of the trial court's denial of a motion for a mistrial made after the prosecutor questioned Commonwealth witness William Whitehouse concerning the existence of photographs ruled inadmissible.

IV. Whether the defendant is entitled to a new trial as a result of trial court error in allowing the Commonwealth to present speculative testimony with regard to the existence of a third fired cartridge casing.

V. Whether the defendant is entitled to a new trial as a result of trial counsel's ineffectiveness for failing to object

to the portion of the prosecutor's summation that constituted a direct comment on the defendant's election not to testify at trial.

VI. Whether the defendant is entitled to a new trial as a result of trial counsel's ineffectiveness for failing to request a jury instruction as to intoxication or drugged condition.

Appellant's Brief at 5–6. We will consider Appellant's issues in the order in which he raises them.

■ ¶ 5 Appellant first argues that the evidence was insufficient to sustain his conviction for first degree murder. We have said in prior cases:

> In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Montini*, 712 A.2d 761, 767 (Pa.Super.1998); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103, 1105 (1994), *appeal denied* 538 Pa. 669, 649 A.2d 671 (1994). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 965 (1996). It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Molinaro*, 429 Pa.Super. 29, 631 A.2d 1040, 1042 (1993). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Seibert*, 424

Pa.Super. 242, 622 A.2d 361, 363 (1993), *appeal denied* 537 Pa. 631, 642 A.2d 485 (1994) (citing *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)).

■ ¶ 6 As our Supreme Court has recently stated:

> The elements of first-degree murder are that the defendant unlawfully killed a human being, the defendant killed with malice aforethought, and the killing was willful, deliberate, and premeditated. 18 Pa.C.S.A. § 2502(a), (d); *Commonwealth v. Cox*, 556 Pa. 368, 728 A.2d 923, 929 (Pa.1999). The willful, deliberate, and premeditated intent to kill is the element that distinguishes first-degree murder from other degrees of murder. *Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293, 297, cert. denied, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). The Commonwealth may prove this specific intent to kill by circumstantial evidence. *Id.* The use of a deadly weapon on a vital part of the victim's body may constitute circumstantial evidence of a specific intent to kill. *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 311 (Pa.1995).

*Commonwealth v. Wesley*, 562 Pa. 7, 753 A.2d 204, 208 (2000); *Accord Commonwealth v. Devine*, 750 A.2d 899, 904 (Pa.Super.2000).

¶ 7 A deadly weapon as defined in the Crimes Code is

· Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or

instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S.A. § 2301. *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d. 871, 874 n. 5 (2000).

¶ 8 In the present case, the evidence adduced at Appellant's trial through the testimony of eyewitness Kuwayne El, showed that Appellant suddenly and without any warning or provocation shot the decedent, Anthony Grant, three times in the head with a semiautomatic pistol. Although El did not directly observe Appellant shoot the decedent, El, the Appellant and the decedent were the only individuals present in the near vicinity at the time of the shooting. Immediately after El heard the three gunshots, he saw the decedent lying on the ground and Appellant walking away with a gun in his hand. The decedent sustained three gunshot wounds to the head which were the cause of his death. Under these circumstances, the jury could have reasonably inferred that it was Appellant who shot the decedent thereby causing his death. *See e.g. Commonwealth v. Rios*, 546 Pa. 271, 282, 684 A.2d 1025, 1030 (1996) (even though witnesses did not actually see defendant shoot victim, because jury could have reasonably believed that defendant was the shooter under the factual circumstances, evidence was sufficient to sustain defendant's conviction for first degree murder); *Commonwealth v. Moore*, 534 Pa. 527, 537, 633 A.2d 1119, 1124 (1993), *cert. denied*. 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (same). Appellant's deliberate use of a pistol to deliver three bullets to the decedent's head, one of the most vital portions of the body, was ample evidence of his specific intent to kill Mr. Grant. *Scott*, *supra*. Thus the evidence, viewed in a light most favorable to the Commonwealth as verdict winner, is clearly sufficient to sustain Appellant's conviction for first degree murder.

¶ 9 Nevertheless, Appellant argues to this Court that he should not be convicted of first-degree murder since he lacked the requisite malice in committing the act. We disagree. As the Supreme Court has noted: "If the act of the defendant under all the circumstances properly gives rise to an inference that the appellant knew or should have known that the consequence of his act would be death or serious bodily harm, malice is present." *Commonwealth v. Rawles*, 501 Pa. 514, 522, 462 A.2d 619, 623 (1983). Malice like specific intent can also be inferred from the use of a deadly weapon on a vital part of the body. *Id.* Clearly Appellant knew or should have known that the propulsion of bullets into the decedent's head via the firing of his gun was likely to cause death or serious bodily injury by causing damage to the decedent's brain. Thus, the requisite malice on the Appellant's part was present, as well, to sustain his conviction for first degree murder.

¶ 10 Appellant's reliance on *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975) as support for his contention is misplaced. In *Caye*, the defendant was inside of a house when an individual forced his way through the locked back door of the house. *Id.* at 101, 348 A.2d at 137. The defendant shot the individual as the individual entered the doorway of the house. *Id.* The defendant was convicted of first degree murder. The Supreme Court reversed the defendant's conviction because there was no evidence of malice on the part of the defendant. The Court held that the attending circumstances, which tended to show that the defendant was acting in self-defense, negated any inference of malice by the defendant's use of a deadly weapon on a vital part of the body. *Id.* at 103, 348 A.2d at 138.

¶ 11 In the case at bar there is no evidence of record that Mr. Grant threatened or provoked Appellant in any way prior to the shooting. Indeed, as Appellant correctly maintains in his brief, the evidence shows that there was no argu-

ment or altercation of any sort between the Appellant and the decedent prior to the shooting. Thus, unlike in *Caye*, there are no evidentiary circumstances in the present case to support a contention that Appellant was acting in self-defense which would negate the inference of malice raised by Appellant's use of a deadly weapon on a vital portion of the decedent's body. In fact, the sudden and unexpected manner in which the shooting took place, without any apparent causative reason or event, strongly suggests that it had been planned or contemplated by Appellant beforehand. Appellant's argument is therefore without merit.

■ ¶ 12 With respect to his second issue, Appellant argues that he is entitled to new trial since the Trial Court erred by allowing the Commonwealth to present the testimony of Assistant District Attorney Richard Sax regarding the actions and demeanor of the Commonwealth's chief witness, Kuwayne El at the preliminary hearing. Sax was, at the time of Appellant's preliminary hearing, the Assistant District Attorney who was assigned to the case. Appellant contends that by allowing Sax to testify, Sax was improperly personally vouching for the credibility of El as a witness, which was particularly inappropriate, inasmuch as a prosecutor cannot express his personal opinion as to the truth or falsity of any testimony or evidence. Appellant essentially argues that Sax's testimony served to improperly bolster the credibility of El and thereby interfered with the jury's role as the exclusive determiner of witness credibility. After careful evaluation of the testimony of El and Assistant District Attorney Sax, we are compelled to disagree.

■ ¶ 13 When reviewing a Trial Court's decision to allow a witness to testify we are guided by the principle that trial judges have broad latitude and discretion in allowing the introduction of evidence; thus we will not reverse a trial court's decision to allow a witness to testify absent a showing that the trial judge abused his

discretion. *Commonwealth v. Peer*, 454 Pa.Super. 109, 684 A.2d 1077, 1082 (1996).

■ ¶ 14 We first note that there is no *per se* rule which prohibits an assistant district attorney who has handled the preliminary hearing phase of the prosecution of a defendant from later testifying at the defendant's trial, particularly whenever the trial is being conducted by a different assistant district attorney altogether. *See Commonwealth v. Doa*, 381 Pa.Super. 181, 553 A.2d 416, 426 (1989) (trial court did not err in allowing assistant district attorney who handled prosecution of defendant at preliminary hearing to later testify at defendant's trial when testifying assistant district attorney was not functioning in the dual capacity of witness and advocate); *Accord Commonwealth v. Turner*, 390 Pa.Super. 216, 568 A.2d 622, 624 (1989), *appeal denied*, 527 Pa. 645, 593 A.2d 418 (1990). Notwithstanding this fact, it is also equally true that the Commonwealth may not use the testimony of an assistant district attorney to improperly bolster a witness's credibility in the eyes of the jury. As our Court has recognized:

> [I]mproper bolstering or vouching for witnesses by the Commonwealth occurs in two situations: (1) When the prosecution places the prestige of the government behind the witness by personal assurances of the witness's veracity; and (2) when the prosecution indicates that information which is not before the jury supports the witnesses testimony.

*Commonwealth v. Lam*, 453 Pa.Super. 497, 684 A.2d 153, 158 (1996), *appeal denied* 548 Pa. 645, 695 A.2d 784 (1997); *Commonwealth v. Hartey*, 424 Pa.Super. 29, 621 A.2d 1023, 1026 (1993), *appeal denied*, 540 Pa. 611, 656 A.2d 117 (1994). Our review of the relevant portions of the trial testimony in the case at bar indicates, however, that neither of these two situations occurred as the result of the testimony of Assistant District Attorney Sax.

¶ 15 During direct examination, Commonwealth witness El admitted that he

had not told the "whole truth" when he had testified previously at the preliminary hearing. N.T. Trial, 12/15/98 at 36. El indicated that he did not want to be a witness in the case because he was scared. *Id.* at 35. Later, during cross-examination, El was specifically confronted by Appellant's counsel with his preliminary hearing testimony in which El had testified that he had not seen a gun in Appellant's hands after hearing the gunshots. *Id.* at 61. This contrasted with El's testimony on direct examination that he turned and saw Appellant carrying a gun after he heard the gunshots. *Id.* at 22. El again acknowledged that when he testified at the preliminary hearing he did not tell the truth. *Id.* at 62. However, El indicated that the reason he gave his earlier untrue testimony at the preliminary hearing was that he did not want to testify because he was scared. *Id.* at 66, 80.

¶ 16 When the Commonwealth offered the testimony of Assistant District Attorney Sax, the Trial Court made clear that it was allowing the testimony strictly for the very narrow purpose of establishing the demeanor of El at the preliminary hearing, namely whether or not he was scared. *Id.* at 151. Our Court has previously held that inconsistencies in a witness's prior statement can be explained by testimony which corroborates the emotional condition of the witness at the time he or she gave the prior inconsistent statement. This principle was established in the case of *Commonwealth v. Jorden*, 333 Pa.Super. 291, 482 A.2d 573 (1984). In *Jorden*, a rape prosecution, the Commonwealth's chief witness was the victim. At trial the victim was effectively cross-examined by defense counsel who pointed out several inconsistencies between her trial testimony and the statement she gave to the investigating detective on the night of the attack. The victim explained that her earlier statement to the detective was inaccurate because she was upset due to the trauma of the rape. *Id.* at 579.

¶ 17 The Commonwealth was permitted by the trial court, over defendant's objection, to present the investigating detective. to testify as to his observations of the defendant on the evening when she gave her statement. The detective testified that the victim was "crying, sobbing and trembling." *Id.* Appellant challenged the trial court's decision to allow this testimony on the basis that it was "irrelevant, prejudicial and immaterial." *Id.*

¶ 18 Our Court affirmed the decision of the trial court to allow the detective's corroborative testimony. Our Court said:

We conclude that because defense counsel attempted to impeach her and put her veracity in issue, the Commonwealth was entitled to introduce evidence for the purpose of corroborating complainant's explanation that she was upset at the time she gave her original statement to the police. Detective Chopko's testimony concerning his observation of her physical condition around the time she gave her statement to the police is relevant and probative as explaining inaccuracies or omissions in that statement. Moreover, such relevance and probative value outweighs any prejudice to the appellant.

*Id.*

¶ 19 Thus, in the case *sub judice*, since Appellant's trial counsel successfully put El's veracity in considerable question via his skillful cross-examination, and since El specifically testified that the reason he gave his earlier "semi-true" testimony at the preliminary hearing was the result of his fear, the Commonwealth was entitled to corroborate El's explanation through the testimony of a witness who observed El's emotional condition at the time of the preliminary hearing. Sax was in close contact with the witness at the preliminary hearing and therefore, like the detective in *Jorden*, had ample opportunity to observe the witness's demeanor and emotional state. Consequently, he was correctly permitted by the Trial Court to testify only as to his observations of El's behavior

and also to recount specific statements made by El which were indicative of his fear.[4]

¶ 20 Our review of the testimony of Sax indicates that his testimony remained within the carefully circumscribed boundaries established by the Trial Court. Sax testified that when he first interviewed El immediately prior to the preliminary hearing, El indicated that he was not going to testify. El said: "I am not getting killed over this." N.T. Trial, *supra*, at 162. Sax further testified that El appeared to be "extremely frightened." *Id.* Sax reached his conclusion that El "looked scared" because he observed El to be "hesitant" and "shaking." *Id.* at 163. Sax further indicated that once the hearing began El was a reluctant witness "much less willing to answer questions" then when he spoke to him privately before the hearing. *Id.* at 166. Sax related also that El "seemed frightened throughout [the proceeding]" but seemed more willing to answer the questions posed by Appellant's attorney. *Id.* at 167. Again, on cross-examination Sax indicated that El appeared frightened throughout the entire twenty (20) minute period that he was testifying. *Id.* at 172.

¶ 21 Importantly, Sax did not at any time express a belief as to whether he thought El was telling the truth when he testified or that he thought El to be a credible and accurate witness. Consequently, Sax was in no way offering his personal opinion whatsoever as to El's credibility as a witness or otherwise vouching for El to the jury, actions which would have been manifestly improper. Neither did Sax attempt to support El's prior testimony by referring to matters that were not already in evidence. His testimony did not therefore improperly bolster El's credibility. Thus we can find no abuse of

discretion on the part of the learned Trial Judge in permitting him to testify in this limited fashion.

■ ¶ 22 With respect to Appellant's third issue, he argues that the Trial Court erred by refusing to grant his request for a mistrial when the prosecutor questioned a witness about the existence of photographs of the decedent's uncovered body which the Trial Court had previously ruled to be inadmissible due to their inflammatory nature. The improper questioning by the prosecutor proceeded as follows:

[The Prosecutor]: That is all the photographs that are marked here today?

A. [Commonwealth Witness]: That are marked, yes.

Q. You took thirteen, so there were some others; right?

A. Yes.

Q. Some of those show the victim's body without the sheet?

A. Objection.

Q. Sustained.

N.T. Trial, *supra*, at 124–125. Although the Trial Court denied defense counsel's immediate request for a mistrial, the Court gave the following cautionary instruction to the jury at defense counsel's request:

[Trial Court]: Juror's, I just want to remind you that you are to consider only the evidence that is presented to you. You are not to suppose or guess about anything that is not presented to you with regard to (sic) in this case any photographs that you are actually not shown, you are not to suppose or guess anything with regard to those; do you understand that?

(Whereupon the jury panel collectively answer in the affirmative, at this time) *Id.* at 127–128.

*Auker,* 545 Pa. 521, 547, 681 A.2d 1305, 1319 (1996) ("State of mind is a recognized exception to the hearsay rule for statements are admitted not for the truth of the statements but to show the mental state of the person making such statements.").

---

4. Sax's recounting of El's statements which demonstrated El's fear was not prohibited by the hearsay rule since the statements were not being offered to prove the truth of the matters contained therein but merely to show El's state of mind at the time he made the statements. Pa.R.E. 803(3); *Commonwealth v.*

¶ 23 In addressing Appellant's argument we are guided by the well-settled legal precept that "the decision whether to grant a new trial because of prosecutorial misconduct is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Commonwealth v. Rios*, 554 Pa. 419, 429, 721 A.2d 1049, 1054 (1998). As our Supreme Court has made clear:

> Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. Rather, the focus is on what, if any, effects the comments had on the jury. A new trial is required when the effect of the District Attorney's comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

*Commonwealth v. Faulkner*, 528 Pa. 57, 77, 595 A.2d 28, 38 (1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397, (1992) (internal citations and quotations omitted). Our review of the above quoted portion of the Assistant District Attorney's questioning testimony compels us to conclude that his question regarding the excluded photographs, even though obviously improper in light of the Trial Court's prior ruling excluding them, did not serve to prejudice the jury so that they could not properly weigh the evidence and arrive at a verdict.

¶ 24 The Trial Court noted three factors in support of its decision not to grant a mistrial:

> First, the jury did not see the photographs of the uncovered body. Second, the comment did not cause the jury to form any prejudice toward the defendant because it was not inflammatory in nature; to the contrary, it was neutral. And finally, this Court immediately instructed the jury to disregard the comments of the prosecutor.

Trial Court Opinion at 5. We are in agreement with the Trial Court that these factors clearly establish that a mistrial was not warranted. The explicit cautionary instruction given to the jury was more than sufficient to ameliorate any potential harm to the Appellant from the prosecutor's question. Thus, we uphold the decision of the Trial Court not to grant Appellant a mistrial on this basis. However, we strongly remind the prosecutor to be more attentive in the future to his duty to be cognizant of the Trial Court's evidentiary rulings when choosing which questions to ask of a witness.

¶ 25 Appellant's fourth assignment of error is that the Trial Court erred by allowing the Commonwealth to present speculative testimony with regard to the existence of a third fired cartridge casing. Specifically he complains that the Trial Court erred in allowing criminal evidence specialist, William Whitehouse, to present speculative testimony as to why only two cartridge casings were found at the scene even though three shots had been fired.

¶ 26 We note at the outset of our discussion of this issue that an appellate court may reverse a trial court's ruling on the admissibility of testimonial evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225, 229 (2000); *Commonwealth v. Hawk*, 551 Pa. 71, 77, 709 A.2d 373, 376 (1998). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Hess*, 745 A.2d 29, 31 (Pa.Super.2000).

¶ 27 The specific portion of Mr. Whitehouse's testimony, which Appellant complains of, was as follows:

> [Prosecutor]; Do you have some explanation then as to why the third cartridge case was not recovered?

[Whitehouse]: When a semi-automatic weapon is fired, it ejects the fired cartridge case after the bullet is expended. If a semi-automatic misfires or jams, a fired cartridge case could remain in the weapon. There have been instances that I observed where a fired cartridge case could be picked up in a tire track and driven from the scene; if people are wearing boots, they can wind up in the tread of the boot and walk away that way. Firing a gun or a semi-automatic, it is possible a fired cartridge case could wind up in a person's clothing too.

[Prosecutor]: So you have firsthand experience of fired cartridge cases being stepped upon by people wearing boots and getting caught in their treads?

[Whitehouse]: Yes.

[Prosecutor]: You have actual experience where fired cartridge cases were on the street but when a car came down the street, the cartridge case was caught in the tread of the wheel and went down the street?

[Whitehouse]: Yes.

N.T., 12/15/98, at 131–132.

¶ 28 It is clear from a reading of this testimony that Whitehouse did not attempt to offer an absolute definitive opinion as to what happened to the third shell casing in the instant case, despite the request of the prosecutor to provide a specific explanation. To the contrary, in response to the prosecutor's question, Whitehouse only discussed the functional operation of semi-automatic weapons and his personal observations of what he had seen happen to spent shell casings ejected from semi-automatic weapons on prior occasions. Since Whitehouse related in his testimony only observations which were gleaned from his prior personal experiences and his personal knowledge of weapons, and since he did not attempt to state a conclusive opinion with respect to what happened to the third shell casing in this case, his testimony was permissible. *See e.g. Commonwealth v. Grabowski*, 378 Pa.Super. 454, 549 A.2d 145, 151 (1988), *appeal denied*, 522 Pa. 583,

559 A.2d 526 (1989) ("A witness may state relevant facts known to him, because of experience, even though he is not regarded as an expert whose opinion would be admissible in a hypothetical inquiry.") quoting *Commonwealth v. Bennett*, 471 Pa. 419, 423–424, 370 A.2d 373, 375 (1977); *Commonwealth v. Worrell*, 277 Pa.Super. 386, 419 A.2d 1199, 1202 (1980) (same).

¶ 29 Moreover, we note that Appellant, through counsel, was the one to first raise the issue of potential explanations for the missing shell casing during his cross-examination of Officer Holt. Appellant's trial counsel had asked Officer Holt if it was possible that when a person fired a semi-automatic weapon one of the cartridges might remain in the weapon after firing. N.T., 12/14/98, at 68. Officer Holt had indicated that this was possible. *Id.* Thus, since the issue of what potentially could have happened to the missing shell casing had already been brought before the jury by the Appellant, the Commonwealth was permitted to engage in this line of questioning of Whitehouse to offer other possible explanations as to why the shell casing was not found. The Trial Court committed no abuse of discretion in permitting this line of questioning, inasmuch as the door to such questioning had already been opened by the Appellant.

¶ 30 Appellant next argues that trial counsel was ineffective for failing to object to a portion of the prosecutor's closing argument, which Appellant contends was an improper comment on the Appellant's decision not to testify at trial. The standard of review for a claim of ineffective assistance of counsel raised in a direct appeal is well-settled. Counsel is presumed effective and the burden of proving ineffectiveness rests with the Appellant. *Commonwealth v. Uderra*, 550 Pa. 389, 400, 706 A.2d 334, 339 (1998); *Commonwealth v. Burkholder*, 719 A.2d 346, 349 (Pa.Super.1998), *appeal denied*, 560 Pa. 738, 747 A.2d 364, (decided 11/24/99).

¶ 31 When evaluating ineffectiveness of counsel claims our Court employs a three-pronged test:

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

*Commonwealth v. Rovinski*, 704 A.2d 1068, 1071 (Pa.Super.1997), *appeal denied,* 555 Pa. 707, 723 A.2d 1024 (1998) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 522–26, 645 A.2d 189, 194–195 (1994)).

¶ 32 The prosecutor made the following specific remarks in his summation of which Appellant complains:

I will give you reasons why Kuwayne El is not the killer. The defense is so obvious. I knew what Counsel was going to argue. There is nothing else they can argue. Number one, if Kuwayne El was the killer and the police come to talk to him in November of 1997, he would not have given this statement. He would have done the first thing that comes into a person's mind when they are accused of doing something that they know they didn't do. You deny it. You weren't there. I didn't do it. I don't know what happened. What do you know about the killing of Anthony Grant? I don't know nothing. I wasn't there. I got nothing to say about it. You are talking to the wrong guy. He would have kept his mouth shut.

If he is the killer, he would keep his mouth shut and say absolutely nothing. You heard that a person accused of a crime has a Fifth Amendment Right, a right to silence, a right not to say anything.

Kuwayne El would have the same right if he was the killer, just like the Defendant has a right to remain silent; doesn't have to testify in this courtroom. No one can force him to get up there and tell his side of the story and you can't hold it against him. The same rights apply to Kuwayne El. Those are Constitutional rights. They are not unique to him, Kuwayne El has a constitutional right to say I am not saying anything. I am pleading the Fifth. You can't force him to give a statement. You can't do it. If Kuwayne El is the killer, he would never blame the Defendant. He would blame a mystery man. He would make up somebody else and its not hard to do.

N.T., 12/16/98, at 143–145.

¶ 33 It is axiomatic that a prosecutor may not comment adversely on a defendant's refusal to testify with respect to the charges against him since such commentary would compromise the defendant's privilege against self-incrimination and the defendant's constitutional presumption of innocence. *Commonwealth v. Hall*, 549 Pa. 269, 287, 701 A.2d 190, 199 (1997). This is so because "allowing the prosecution to comment on the accused's failure to testify is, in effect, allowing the failure to take the witness stand to be used as evidence against him, which in the minds of the jurors would be indicative of guilt." *Commonwealth v. Torres*, 329 Pa.Super. 58, 477 A.2d 1350, 1353 (1984) quoting *Commonwealth v. Henderson*, 456 Pa. 234, 238, 317 A.2d 288, 291 (1974).

¶ 34 However, "[s]uch comments are improper only if they unequivocally call attention to the defendant's failure to testify." *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375, 389

(1974). Therefore, "[r]eference to the failure of a defendant to testify on his own behalf, to constitute reversible error, must call the jury's attention to the fact that the defendant has not testified and must reasonably lead to an inference that he would have taken the stand if not guilty." *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 631 A.2d 597, 611 (1993), *appeal dismissed*, 539 Pa. 270, 652 A.2d 293 (1994), *quoting Commonwealth v. Kloiber*, 378 Pa. 412, 420–421, 106 A.2d 820, 825 (1954), *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954).

¶ 35 Our review of the above-quoted portion of the prosecutor's remarks compels us to conclude that the prosecutor did not adversely comment on the Appellant's failure to testify. To the contrary, the prosecutor directed the focus of his discussion on Kuwayne El in an attempt to disprove the defense argument that El was the killer. The prosecutor's comment was an attempt to explain why it was unlikely that El was fabricating his story. The prosecutor's point was that El's credibility as a witness was bolstered by the fact that he volunteered a statement to the police, which placed him at the scene of the crime and potentially made him a suspect, when it would have been much easier for him to have taken the other routes which were available to him, *i.e*, to say nothing or to deny any knowledge of the crime or having been present at the scene. The prosecutor in no way focused his remarks on the Appellant to indicate that the jury could infer that Appellant must be guilty since he failed to take the stand. In fact, the prosecutor reminded the jury that they could not hold it against Appellant if he did not take the stand since he had no duty to do so. Since the prosecutor's remarks were a commentary only on El's credibility, and not an attempt to cause the jury to

conclude that Appellant was guilty since he did not take the stand, trial counsel had no basis on which to object to them. As such, he cannot be deemed ineffective for failing to do so. *See Commonwealth v. Gaskins*, 692 A.2d 224, 228 (Pa.Super.1997) (counsel cannot be deemed ineffective for failing to raise a meritless claim).[5]

■ ¶ 36 In Appellant's sixth issue, he argues that Trial Counsel was ineffective for failing to request a jury instruction concerning the Appellant's intoxicated or drugged condition. Appellant asserts that such an instruction was requested by Trial Counsel at the conclusion of Appellant's first trial. Appellant thus reasons that since the evidence presented at his first trial and this trial was the same trial counsel should have again requested the same instruction and had no reasonable basis for failing to do so. Appellant avers that this instruction could have led to the jury to conclude that Appellant was suffering from diminished capacity at the time of the murder, thereby negating his ability to form the specific intent to kill and correspondingly mitigating his culpability for the crime of first degree murder to third degree murder. Our review of the record compels us to conclude that trial counsel did indeed have a reasonable basis for failing to request such an instruction and therefore was not ineffective for failing to do so.

■ ¶ 37 As our Supreme Court has said:

Evidence of intoxication or drug use does not of itself negate otherwise sufficient evidence of specific intent. *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984), cert. denied, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984). Instead, a defendant claiming use of such intoxicants must be over-

5. We note also that the Trial Court clearly instructed the jury at the beginning and end of Appellant's trial that they could not draw

any adverse inferences from the defendant's failure to testify.

whelmed or overpowered by them to the point of losing control over his/her faculties. *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993).

*Commonwealth v. Wilson*, 543 Pa. 429, 439, 672 A.2d 293, 297 (1996), *cert. denied* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). Consequently, if a criminal defendant does not introduce evidence at trial that shows that his or her drug use caused him to lose control of his or her faculties, then he or she is not entitled to a jury charge on diminished capacity. *Id.* at 439, n. 1, 672 A.2d at 298, n. 1. *Accord Commonwealth v. Marinelli*, 547 Pa. 294, 329, 690 A.2d 203, 220 (1997) *cert. denied* 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (1998); *Commonwealth v. Tilley*, 528 Pa. 125, 136, 595 A.2d 575, 580 (1991).

■ ¶ 38 We agree with Appellant that there was evidence introduced indicating that he had smoked marijuana (the "blunt") prior to the shooting, however evidence of a defendant's mere usage of a drug alone is not enough to warrant a jury charge on diminished capacity. *See e.g. Wilson, supra* (evidence that defendant smoked cocaine during the evening in which he committed the murder was not enough to warrant jury charge on diminished capacity as there was no evidence that the cocaine use caused defendant to lose control of his faculties); *Marinelli, supra* (testimony that there was alcohol consumption by defendant prior to killing insufficient to warrant jury charge on diminished capacity); *Tilley, supra* (evidence that defendant consumed alcohol and appeared drunk to one of his friends was not sufficient to support the conclusion that defendant was overwhelmed or overpowered to be incapable of forming the specific intent to kill). There was simply no other evidence of record to suggest that Appellant was under the influence of marijuana or other drugs *to the degree that caused him to lose control of his faculties*. Hence, there was no basis for trial counsel

to request that the trial judge charge the jury as to diminished capacity. Indeed, the Trial Judge had previously rejected Trial Counsel's request for such an instruction at the close of Appellant's first trial. Trial Court Opinion, *supra*, at 5–6. As a result, Trial Counsel could reasonably have concluded, since the evidence presented was identical to that presented in the first trial, that the Trial Court would again reject such a requested charge were he to request it. In sum, as Trial Counsel had no basis for requesting such a charge based on the evidence presented at Appellant's trial, he cannot be deemed ineffective as counsel can never be deemed ineffective for failing to raise a meritless claim. *Tilley, supra*, at 149, 595 A.2d at 586. *See also Commonwealth v. Smith*, 544 Pa. 219, 239–240, 675 A.2d 1221, 1231 (1996), *cert. denied*, 519 U.S. 1153, 117 S.Ct. 1090, 137 L.Ed.2d 223 (1997), (as evidence of record did not support a charge of voluntary intoxication trial counsel's request for such a charge would have been futile and thus trial counsel was not ineffective for failing to request such a charge), *Accord Commonwealth v. Miller*, 541 Pa. 531, 559, 664 A.2d 1310, 1324 (1995) cert. denied, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859, (1996).

¶ 39 As we have determined that Appellant's claims are without merit, we are required to affirm Appellant's judgment of sentence.

¶ 40 Judgment of Sentence affirmed.