**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID T. DONES | |
| Dones | No. 2106 MDA 2015 |

Appeal from the Judgment of Sentence November 3, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000581-2015

BEFORE: LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 13, 2016**

David T. Dones appeals from his judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after being convicted by a jury of disorderly conduct (M-3),[1] resisting arrest (M-3),[2] and, by a trial judge, of the summary offense of public drunkenness.[3]  After careful review, we affirm.

The trial court set forth the salient facts of the case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(4).

[2] 18 Pa.C.S. § 5104.

[3] 18 Pa.C.S. § 5505.

While on routine patrol at approximately 7:23 p.m. on October 11, 2014, Harrisburg Police Officer Jeremy Crist observed David Dones on the southwest corner of Hummel Street and Kittatinny Street in the Allison Hill section of Harrisburg. The Allison Hill area of Harrisburg is considered by law enforcement to be a high-crime area. Officer Crist was wearing his police uniform and was driving a marked police vehicle. Officer Crist observed [Dones] holding what appeared to be a metal pipe in his left hand and a pistol in his right hand. When Officer Crist stopped his vehicle, [Dones] appeared startled and began walking southbound on Hummel Street, away from Officer Crist. Officer Crist alerted other units of what he had observed and followed Dones in his patrol vehicle. [Dones] repeatedly looked back to observe Officer Crist, but did not run or attempt to dispose of the gun. Officer Crist stopped his vehicle, activated his emergency lights, took a defensive position behind his vehicle's engine block, and ordered [Dones] to drop the pistol. [Dones] dropped the pipe (later determined to be a broom handle) but did not drop the pistol. [Dones] began yelling at Officer Crist and moved the pistol out and away from his side and violently shook it in the air. Officer Crist was concerned that either he, [Dones] or other parties might be hurt if he could not de-escalate the situation. After Officer Crist delivered his third command for [Dones] to drop the pistol, [Dones] threw it into the yard of 310 Hummel Street, a home occupied by [Dones'] grandparents. The pistol was later determined to be a CO2-powered BB gun. Officer Crist removed the CO2 cartridge from the gun. The BB gun had the cosmetic features of a real gun.

[Dones] then removed a fanny pack from around his waist and shook it while yelling at Officer Crist. Officer Crist gave several commands to drop the fanny pack, which [Dones] did. At this time, [Dones] jammed his hands into his front pants pockets and continued to yell and curse at Officer Crist. Officer Crist ordered [Dones] to remove his hands from his pockets and place his hands on top of his head. When [Dones] removed his hands from his pockets, Officer Crist came out from behind the cover of his patrol vehicle with his firearm trained on [Dones] in order to take [Dones] into custody. Before Officer Crist could reach [Dones], [Dones] jammed his hands back into his pockets while screaming and shaking violently. Officer Crist retreated back behind his patrol vehicle and again ordered [Dones] to remove his hands from his pockets. [Dones] removed his hands and Officer Crist again approached [Dones] with his service weapon

trained on [Dones]. Office Crist then holstered his weapon, placed [Dones] on the ground and handcuffed him. Officer Crist noticed that [Dones'] breath smelled of alcohol, [Dones'] eyes were bloodshot, and [Dones'] speech was slurred.

Once Dones was handcuffed, Officer Crist attempted to ascertain Dones' identity. Dones did not provide Officer Crist with his name. Officer Crist procured a California-issued identification card from Dones' person which contained Dones' name and date of birth. Officer Matthew Novchich arrived on the scene and transported Dones to the Dauphin County Booking Center. Officer Novchich also observed that Dones smelled of alcohol, was slurring his speech, and had glassy, bloodshot eyes. Dones' testimony established that Dones had consumed alcohol on the day of his encounter with Officer Crist.

Trial Court Opinion, 3/11/16, at 2-4 (citations to record omitted).

On August 12, 2015, Dones was tried before a jury and convicted of all charges. On November 3, 2015, Dones was sentenced to an aggregate sentence of 24 months of probation. Dones filed a timely appeal on December 1, 2015, raising the following issues for our review:

(1) Whether the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [Dones] committed the crime of disorderly conduct where:

   A) The Commonwealth failed to prove that [Dones] acted with the intent to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof, and

   B) The Commonwealth failed to prove that [Dones] created a hazardous or physically offensive condition by an act which serves no legitimate purpose.

(2) Whether the evidence at trial was insufficient to prove that [Dones] committed the crime of resisting arrest where the Commonwealth failed to prove beyond a reasonable doubt:

   A) That [Dones] created a substantial risk of bodily injury or resisted arrest by means justifying or requiring substantial force to overcome his resistance; and

- 3 -

B) That there was an underlying lawful arrest.

Appellant's Brief, at 4.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669, 674 (Pa. Super. 2000).

In his first issue on appeal, Dones contends that there was insufficient evidence to convict him of disorderly conduct where he did not cause public inconvenience, annoyance or alarm, or recklessly create a risk thereof and also did not create a hazardous or physically offensive condition by an act which serves no legitimate purpose. We disagree.

An on-duty Harrisburg police officer observed Dones at night in a high-crime area carrying, what he believed to be, a metal pipe and a pistol. When the officer stopped his vehicle, Dones appeared nervous, repeatedly looked back at the officer, and began walking away from the officer. The officer activated his emergency lights, took a defensive position behind his patrol car, and ordered Dones to drop the pistol. While Dones dropped the item that appeared to be a metal pipe (it was actually a broom handle), he did not drop the pistol. Dones began yelling at the officer and moving the pistol violently in the air. After giving Dones a third command to drop the pistol, Dones threw the pistol into the yard of a nearby residence. Dones

then removed a fanny pack from around his waist and shook it frantically while continuing to yell at the officer. Dones eventually dropped the fanny pack at the officer's command; however, he put his hands in his front pants pockets and continued to yell and curse at the officer. After several unsuccessful attempts to arrest Dones, the officer finally holstered his weapon, placed Dones on the ground and handcuffed him.

Under these facts, we agree with the trial court that Dones' judgment of sentence for disorderly conduct should be affirmed on appeal where he brandished what appeared to be a pipe and a pistol, waving it in the air, and continued to yell at the officer after being told to drop the weapon. **See** 18 Pa.C.S. § 5503(a)(4) ("A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."); **see also Commonwealth v. Thompson**, 922 A.2d 926 (Pa. Super. 2006).

Dones next asserts that the evidence was insufficient to prove that he committed the crime of resisting arrest, in particular claiming that he neither "created a substantial risk of bodily injury [n]or resisted arrest by means justifying or requiring substantial force to overcome his resistance" or that there was an underlying lawful arrest. Dones' Brief, at 8, 19.

The Crimes Code defines resisting arrest as:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person **creates a**

**substantial risk of bodily injury to the public servant or anyone else**, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104. (emphasis added). In **Commonwealth v. Lyons**, 555 A.2d 920 (Pa. Super. 1989), our Court opined that resisting arrest "does not require serious bodily injury[, n]or does it require actual injury to the arresting officer." **Id.** at 924. However, while section 5104 does not require "the aggressive use of force such as striking or kicking of the officer," it does mandate that the forcible resistance used by the defendant involves some substantial danger to the officer. **Commonwealth v. Miller**, 475 A.2d 145, 146 (Pa. Super. 1984).

Instantly, the trial court concluded that standing on a street corner in a high-crime area, waving a suspected firearm in a threatening manner, ignoring multiple requests to drop the firearm, and repeatedly thrusting both hands into pants pockets which forces an officer to retreat back to the cover of his vehicle and drew his service weapon, created a substantial risk of bodily injury to both the officer and any bystanders that may have been in the area. We agree.

Officer Crist was forced to retreat to the safety of his patrol vehicle several times while attempting to effectuate the arrest due to Dones repeatedly ignoring his commands to remove his hands from his pockets while he screamed and shook violently. **See** N.T. Jury Trial, 8/12/15, at 21. Officer Crist testified that Dones was acting agitated and animated as he waved the pistol, later determined to be a loaded BB gun, and yelled at him.

*Id.* at 19-20. Moreover, Officer Crist testified that he feared Dones "was going to pull another firearm [or] . . . knife out of his pants." *Id.* at 22, 29. Finally, the officer testified that the type of BB gun possessed by Dones, which contained $CO_2$ cartridges, could cause injuries if it were shot at an individual. *Id.* at 28; *see Commonwealth v Ramos*, 920 A.2d 1253 (Pa. Super. 2007) (carbon dioxide-powered BB gun considered deadly weapon capable of producing death or serious bodily injury).

Here, Dones' actions prevented Officer Crist from effectuating a lawful arrest and from discharging his duty of restoring order and maintaining the peace. Moreover, Dones' behavior caused Officer Crist to draw his gun. *See* N.T. Jury Trial, 8/12/15 at 21. Thus, we conclude that Dones created a substantial risk of bodily injury to Officer Crist and anyone else in the vicinity where Dones: exhibited erratic behavior while brandishing a loaded $CO_2$ BB gun; repeatedly placed his hands in his pants' pockets against the officer's commands; and, waved a fanny pack in the air which the officer feared contained a gun or a knife. *Miller*, *supra*.

Finally, Dones contends that the Commonwealth failed to prove that there was an underlying lawful arrest which would invalidate his resisting arrest conviction. *See Commonwealth v. Jackson*, 924 A.2d 618 (Pa. 2007) (lawful arrest is element of crime of resisting arrest).

Instantly, Officer Crist was justified in briefly detaining Dones when he first observed Dones walking down the street, in a high-crime area, carrying what he believed to be a metal pipe and pistol. When the officer approached

Dones, he appeared startled, began to walk in the opposite direction from the officer, and repeatedly looked back over his shoulder at the patrol vehicle. When Dones refused to drop the gun and began to violently wave it in the air while yelling at the officer, Officer Crist had reasonable suspicion that criminal activity may be afoot. ***Commonwealth v. Stevenson***, 744 A.2d 1261 (Pa. 2000) (reasonable suspicion determined by totality of circumstances when officer observed unusual conduct which leads him to reasonably conclude criminal activity may be afoot). When Dones continued to thwart Officer Crist's attempts to investigate the matter further by screaming at the officer, jamming his hands into his pockets despite the officer's request to put his hands over his head, and waving a fanny pack which the officer feared may contain another weapon, Officer Crist had probable cause to arrest Dones for disorderly conduct.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude that there was sufficient evidence to prove resisting arrest. ***Randall***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/2016

- 8 -