J-A08022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KHALILAH STAFFORD | |
| Appellant | No. 2860 EDA 2015 |

Appeal from the Judgment of Sentence August 19, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014292-2014

BEFORE: PANELLA, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED MAY 19, 2017**

Khalilah Stafford appeals from her judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following her convictions for aggravated assault, a felony of the second-degree,[1] possession of an instrument of crime (PIC)[2], simple assault[3] and recklessly endangering another person (REAP).[4] Stafford challenges the sufficiency and weight of the evidence. After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702.

[2] 18 Pa.C.S.A. § 907.

[3] 18 Pa.C.S.A. § 2701.

[4] 18 Pa.C.S.A. § 2705.

The trial court set forth the relevant factual history as follows:

The [c]omplainant, [Kendra Edmunds], testified that on November 8, 2014 at around 2:20 a.m., she was asleep at a friend's house located on the 3100 block of North 28th Street in Philadelphia, Pennsylvania. [Edmunds] stated that she awakened by being "sliced four times." [Edmunds] explained that at first she did not notice, but then became aware of her injuries and went to the hospital. [Edmunds] stated, "I got cut on my arm, my shoulder, my arm on the one side, and my buttocks." She clarified that this was on her right side.

On cross-examination, [Edmunds] testified that she did not see the person who sliced her, but knew . . . it was [Stafford]. She stated that there was a party at the house and that she went to bed when the party was over, around 1:30 a.m., but that there were still people in the house. [Edmunds] further stated that she did not see [Stafford] at the house before she went to bed.

. . .

[Robert Harvin] affirmed that [Stafford] was his girlfriend on November 8, 2014. He testified that he spoke to detectives around 6 a.m., but that he was still intoxicated. When asked if he recognized the statement he made to detectives . . . [Robert Harvin] verified that it was his signature, but that he did not want to sign it. [Robert Harvin] affirmed the following statement.

Q: What can you tell me about [Stafford]?

A: She is my ex-girlfriend.

However, [Robert Harvin] clarified that he never told detectives that [Stafford] was his ex-girlfriend. [Robert Harvin] explained that he could not remember what time it was when the statement was taken and that he was too intoxicated to remember giving and signing the statement.

[Robert Harvin] testified that he did not see [Stafford] after the party ended, but said he saw her leave in a cab . . . around 1:30 a.m. and then changed the time to [12:00 a.m.]. [Robert Harvin] affirmed that he did not see [Stafford] at the party between [12:00] a.m. and 1:30 a.m.

. . .

[Eloris Harvin] testified that she lives at 3131 North 28th Street with her sons Andre and Robert. [Eloris Harvin] stated that she knows [Stafford] through Robert Harvin. On November 8, 2014, [Eloris Harvin] saw [Stafford] around 2:30 a.m. in the morning, but could not recall the exact time. [She stated]:

> What happened was we had a birthday party. Anyway things happened, then after that, you know, we were getting ready to go to bed, [Andre Harvin] and I, and we heard a knock on the door. So we thought it was a straggler who left the party. In the meantime, just as [Andre Harvin] was getting ready to close the door [Stafford] barges right upstairs. I thought she was coming to use the bathroom and she runs into the front bedroom where . . . [Robert Harvin] and [Edmunds] were asleep. And as I turned around and looked[,] [Stafford] was running out the door. I remember because I know what [Stafford] had on.

[Eloris Harvin] testified that "it didn't even take ten minutes." [Eloris Harvin] stated that [Edmunds], came downstairs to go to the hospital because she was bleeding.

On cross-examination, [Eloris Harvin] affirmed that she was scheduled to go to cataract surgery a few days after the incident. When prompted about her identification of [Stafford], [Eloris Harvin] repeatedly stated that she knew what [Stafford] looked like and that her eyesight was not that bad that she could not see. [Eloris Harvin] affirmed that detectives read her statement because she was not able to read it on her own. [Eloris Harvin] testified that she was in the living room when she saw [Stafford] come in through the door, run up the stairs[] and later come down the stairs. [Eloris Harvin] stated that she did not see [Stafford] with anything [in] her hands but acknowledged that there was a knife in front of her door.

[Eloris Harvin] testified repeatedly that [Stafford] never left the party. She stated that [Stafford] was getting things together for the party with her earlier during the day and that she never saw [Stafford] leave the party. [Eloris Harvin] further stated that [Stafford] was wearing a black and gold jumpsuit with shoes to match. [Eloris Harvin] did not know if [Stafford] got into a fight with anyone that day. She testified that [Edmunds] and Robert Harvin were sleeping upstairs at the time of the incident. [Eloris

Harvin] stated that they went to sleep at about [11:00] p.m. and added, "[Edmunds] was already asleep[,] [a]nd [Robert Harvin] didn't know she was in there. I have two bedrooms. He did not know she was in there until it happened."

[Eloris Harvin] testified that she did not see anything in [Stafford's] hands when she came in and later ran down the steps, but affirmed that police recovered a knife from the top of the television. When prompted further about whether [Stafford] was carrying anything, [Eloris Harvin] stated, "[w]ell how did it get there?" and then stated that she did see [Stafford] carrying the knife. When approached with her previous statement . . . to detectives on November 8, 2014 at 4:40 a.m., [Eloris Harvin] affirmed that she remembered speaking with detectives at that time. [Eloris Harvin] verified the following portion of her statement and affirmed her signature on the statement:

> Q: Did you see [Stafford] with a knife or cutting instrument?
>
> A: No[.]

[R]ecords from Temple University Hospital for [Edmunds], [were] marked and moved into evidence. A stipulation was entered as to the admissibility that [Edmunds] presented on November 8, 2014 at 3:28 a.m. for multiple stab wounds. She was treated with stitches and a tetanus shot. The wounds were a [two-inch] wound, laceration to her right arm[,] a [1.2-inch] laceration to her right shoulder[,] [and] a [1.2-inch] laceration to her right hip.

Trial Court Opinion, 5/18/16, at 2-6 (citations omitted).

On June 18, 2015, following a bench trial, the trial court found Stafford guilty of aggravated assault, PIC, simple assault and REAP. On August 28, 2015, Stafford filed a timely post-sentence motion claiming that the evidence was insufficient and the verdict was against the weight of the evidence. Stafford filed a timely notice of appeal, and pursuant to Pa.R.A.P. 1925(b), she filed a court-ordered concise statement of errors complained of

on appeal on December 23, 2015. Stafford raises the following issues for our review:

1. Was not the evidence insufficient as a matter of law to sustain a conviction for aggravated assault, [PIC], simple assault[] and [REAP], where the Commonwealth failed to establish who caused the complaining witness to be cut, whether [Stafford] was present at the time of the incident[] and whether a knife was recovered from the scene?

2. Was not the verdict so contrary to the weight of the evidence as to shock one's sense of justice, therefore requiring a new trial, where the only witness to put appellant at the scene of the incident was visually impaired, made her identification by clothing alone[] and gave completely inconsistent testimony?

Brief of Appellant, at 3.

Stafford first claims that the unreliable testimony of Eloris and Robert Harvin is insufficient to sustain a conviction for the above charges. In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669 (Pa. Super. 2000).

A person commits aggravated assault, a felony of the second degree, if he attempts to cause or knowingly causes bodily injury to another with a deadly weapon. 18 Pa.C.S.A. § 2702. A person commits possession of an instrument of crime, a misdemeanor of the first degree, if he possesses any instrument of crime with the intent to employ it criminally. 18 Pa.C.S.A. §

907. An instrument of crime is: (1) anything specially made or specially adapted for criminal use, or (2) anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have. *Id.* A person is guilty of simple assault, a misdemeanor of the second degree, if he (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; or (3) attempts by physical menace to put another in fear of imminent serious bodily injury. 18 Pa.C.S.A. § 2701. A person commits REAP, a misdemeanor of the second degree, if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705.

Stafford's argument rests on her assertion that Eloris Harvin's "opportunity to observe the assailant was minimal, her vision was severely compromised, she was not paying full attention to the assailant and she had no other basis to make an identification." Brief of Appellant, at 16.

Generally, in reviewing the propriety of identification evidence, the central inquiry is whether, "under the totality of the circumstances, the identification was reliable." *Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa. Super. 2011) (citing *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003); *see also Commonwealth v. Jones*, 954 A.2d 1194 (Pa. Super. 2008) (evidence of identification need not be positive and certain to sustain conviction). In determining the reliability of identification testimony,

the finder of fact should evaluate the witness' opportunity to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of description provided, the level of certainty when the identification takes place, and the time between the crime and confrontation. **See Commonwealth v. Sanders**, 42 A.3d 325 (Pa. Super. 2012). "Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight." **Commonwealth v. Orr**, 38 A.3d 868, 874 (Pa. Super. 2011).

Eloris Harvin had an opportunity to observe Stafford before, during and after Robert Harvin's birthday party, and stated she knew Stafford "[t]hrough [Robert Harvin]." N.T. Waiver Trial, 6/18/15, at 22. Eloris Harvin was also able to identify Stafford by her unique "black and gold jump suit" and matching shoes, which she was wearing when, at approximately 2:30 a.m., she entered the front bedroom in which Edmunds was sleeping. N.T. Waiver Trial, 6/18/15, at 27-28. These observations served as an independent basis for her in-court identification of Stafford. **See Commonwealth v. Johnson**, 615 A.2d 1322 (Pa. Super. 1992) (independent basis for in-court identification existed where witness had previously seen defendant on several occasions and positively identified defendant at preliminary hearing). Moreover, Eloris Harvin reiterated her certainty when she stated, "[m]y eyesight was not that bad – excuse me – my eyesight was not that bad that I couldn't see." N.T. Waiver Trial, 5/18/17, at 25.

Edmunds suffered four knife wounds, one each on her two arms, shoulder and buttocks. Edmunds' medical records, indicating she received stitches and a tetanus shot, corroborate the extent of her wounds. *See Commonwealth v. Gray*, 867 A.2d 560, 569 (Pa. Super. 2005) (stipulated admission of victim's hospital records corroborated evidence of aggravated assault, simple assault and PIC). Moreover, Eloris Harvin's testimony placed Stafford at the scene moments before Edmunds was stabbed. Eloris Harvin witnessed Stafford enter her home, run upstairs – where the front bedroom Edmunds was sleeping in is located – and then run back down the stairs and out of her home. Only Eloris Harvin, Andre Harvin, Robert Harvin and Edmunds were present in the home when Stafford entered. Shortly thereafter, Eloris Harvin witnessed Edmunds emerge from the front bedroom with stab wounds. Police later recovered a knife from the top of Eloris Harvin's television near the front door, which Eloris Harvin discovered "in front of [her home's] door". N.T. Waiver Trial, 6/18/15, at 26. Moreover, it is uncontested that Stafford attended the party and was either currently dating or had previously dated Robert Harvin, who was in bed with Edmunds when she was stabbed.

The Commonwealth presented abundant of Stafford's culpability for Edmunds' stabbing. *See Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super 2000) (Commonwealth may sustain burden of proving every crime beyond reasonable doubt by means of wholly circumstantial evidence).

Therefore, the evidence was sufficient to establish all of the above offenses. ***Randall***, ***supra***.

Stafford's final claim is that the verdict was against the weight of the evidence. We disagree. When a defendant challenges the weight of the evidence, relief in the form of a new trial may only be granted where the verdict shocks one's sense of justice. ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003). This Court reviews the trial court's exercise of discretion in ruling on the weight claim, not the underlying question of whether the verdict was against the weight of the evidence. ***Id.***

Based on Eloris Harvin's testimony detailing Stafford's presence at her home when Edmunds was stabbed, Stafford's relationship with Robert Harvin and Edmunds' medical records, it was reasonable for the trial court to conclude that Stafford's conviction does not shock one's sense of justice. Therefore, the trial court did not abuse its discretion. ***Id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2017

- 9 -