J-S21032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NAFIS STOKES | |
| Appellant | No. 1837 EDA 2013 |

Appeal from the PCRA Order June 3, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003465-2007
CP-51-CR-0007499-2007

BEFORE:  SHOGAN, J., ALLEN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 24, 2014**

Nafis Stokes appeals from the order entered June 3, 2013, in the Philadelphia County Court of Common Pleas, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*. Stokes seeks relief from the judgment of sentence of an aggregate 16 to 32 years' imprisonment imposed following his conviction of conspiracy to commit murder[1] and related offenses for the 2007 shooting of a 14-year-old victim.  Contemporaneous with this appeal, appointed counsel has filed a ***Turner/Finley***[2] "no merit" letter and petition seeking leave to withdraw

---

[1] 18 Pa.C.S. §§ 903 and 2502.

[2] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

from representation. For the reasons set forth below, we affirm, and grant counsel leave to withdraw.

The facts underlying Stokes's arrest and conviction were summarized in the opinion of this Court affirming his judgment of sentence on direct appeal:

> On January 8, 2007, fourteen-year-old M.L. and his friend were seeking to purchase marijuana. The two boys proceeded down Judson Street in Philadelphia where they encountered a group of males, including [Stokes]. A member of the group asked M.L. why he was on his block and ordered M.L. to leave. M.L. responded that he could walk wherever he wanted and that the individual did not own the block. After the verbal sparring, M.L. and his friend entered a Chinese restaurant at the end of the street. When M.L. exited, he was shot three times, once in the lower back, left arm, and left groin. Although suffering from three gunshot wounds, M.L. ran four blocks before collapsing in the road. Police transported him immediately to Temple University Hospital where he underwent emergency surgery. As a result of the shooting, doctors removed M.L.'s left kidney.
>
> Philadelphia detectives … interviewed M.L. after his release from the hospital. M.L. informed police that the shooter was, "Black, dark skin, tall but a little shorter than the other guy, short hair, he's always on Judson Street. Somebody told me his name is Nafis." N.T., 2/24/10, at 103. In addition, he told the detectives that the shooter was not wearing a mask and that he recognized him from seeing him on Judson Street for approximately one year. After being shown a photograph of [Stokes], M.L. confirmed that the photograph was of the individual who shot him.
>
> Police arrested [Stokes] at his mother's home on Judson Street. At the time of the arrest, [Stokes] was exiting the front bedroom on the second floor of the house. A search of [Stokes's] person revealed six packets of marijuana. Additionally, in the bedroom from which [Stokes] was seen departing, police found a .38 caliber revolver as well as a small amount of marijuana. The gun recovered by police did not match ballistics for the weapon that wounded M.L. In another bedroom, police located

- 2 -

additional marijuana, [Stokes's] identification card, and drug paraphernalia. Thereafter, the Commonwealth charged [Stokes] with attempted murder, conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, REAP, PIC, firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia. These charges stemmed from the shooting incident. The Commonwealth also charged [Stokes] with possession of marijuana, PIC, and persons not to possess firearms.

M.L. subsequently identified [Stokes] as his attacker at [the] preliminary hearing, stating that he knew [Stokes] did it and that he had no doubt that [Stokes] shot him. However, at trial M.L. testified differently, asserting that [Stokes] did not shoot him and that he never told police that [Stokes] was the shooter. According to M.L., [Stokes] was entering a car on the corner of the street when the incident occurred. He also claimed that he told police the same story. As a result of [M.L.'s] inconsistent statements, the Commonwealth introduced [M.L.'s] preliminary hearing testimony as substantive evidence and called the assistant district attorney who presented the Commonwealth's case at [Stokes's] preliminary hearing. The district attorney testified that M.L. had identified [Stokes] as his assailant. Similarly, both [police detectives] stated that they took a verbatim statement from M.L. identifying [Stokes] as his attacker.

* * * *

Related to the shooting incident, the jury returned not guilty verdicts on the counts charging attempted murder, PIC, and both firearms violations. Thus, the jury appeared to have concluded that the prosecution failed to prove beyond a reasonable doubt that [Stokes] was the actual shooter and possessed a gun during the shooting. However, the jury did find [Stokes] guilty of conspiracy to commit murder, aggravated assault, conspiracy to commit aggravated assault, and REAP.[3] With respect to the drug related charges, the jury found [Stokes]

_____

[3] 18 Pa.C.S. §§ 903, 2502, 2702(a)(1), and 2705, respectively.

guilty of possession of a controlled substance and PIC.[4] In a separate proceeding, the trial court adjudicated [Stokes] guilty of the person not to possess firearms charge.[5]

**Commonwealth v. Stokes**, 38 A.3d 846, 850-851 (Pa. Super. 2011).

On May 17, 2010, the trial court imposed an aggregate sentence of 16 to 32 years' imprisonment.[6] Stokes filed a direct appeal to this Court, which affirmed his judgment of sentence on December 1, 2011. **Stokes**, **supra**.[7]

_____

[4] 35 P.S. § 780-113(a)(16) and 18 Pa.C.S. § 907, respectively.

[5] 18 Pa.C.S. § 6105.

[6] The trial court applied the deadly weapon enhancement, pursuant to 204 Pa. Code § 303.10(a)(2), to the guideline ranges for Stokes's convictions of conspiracy, aggravated assault, REAP, and possession of a controlled substance. The court also imposed a mandatory minimum five year sentence, pursuant to 42 Pa.C.S. § 9712, for his conviction of aggravated assault, based upon the court's finding that Stokes committed the offense while visibly possessing a firearm. Accordingly, for the shooting incident (Docket No. 51-CR-0003465-2007), the trial court imposed consecutive sentences of 10 to 20 years' imprisonment for conspiracy to commit murder and five to 10 years' imprisonment for aggravated assault, and a concurrent sentence of one to two years' imprisonment for the charge of REAP. For the drugs and weapons found in Stokes's mother's home (Docket No. 51-CR-0007499-2007), the court imposed a consecutive sentence of one to two years' imprisonment for possession of a firearm, and concurrent sentences of 30 days for possession of a controlled substance, and one to two years for possession of an instrument of crime.

[7] Stokes raised the following issues on direct appeal: (1) the evidence was insufficient to support his conviction of PIC; (2) the jury's verdict was inconsistent; (3) the trial court erred when it refused to submit a special interrogatory regarding whether Stokes possessed the drugs in the bedroom where the police found the firearm; (4) the court erred in imposing the Section 9712 mandatory minimum and the deadly weapon enhancement, when the jury acquitted him of the charges related to possession of a firearm during the shooting incident; (5) the court erred when it permitted the prosecution to elicit impermissible voucher testimony from a police

*(Footnote Continued Next Page)*

Thereafter, on June 12, 2012, Stokes filed a timely, counseled PCRA petition. After providing Stokes with notice of its intent to dismiss the petition without first conducting an evidentiary hearing pursuant to Pa.R.Crim.P. 907, the PCRA court entered the following order on May 24, 2013:

> AND NOW, this 24th day of May, 2013, this Court having determined that the issues raised by Petitioner in his Post Conviction Relief Act Petition are without merit, this matter is DISMISSED, pursuant to *Commonwealth v. Finley*, 550 A.2d 213 Pa.Super. 1988. 907 Notice previously sent. Defense attorney, Teri Himebaugh, Esquire is permitted to withdraw from further representation of Petitioner. Petitioner may however, proceed on appeal on a *pro se* basis or with retained counsel. *In Forma Pauperis* status to continue.

Order, 5/24/2013. Although the PCRA court indicated that it permitted counsel to withdraw pursuant to **Turner**/**Finley**, neither a motion to withdraw nor a **Turner**/**Finley** "no-merit" letter is included in the certified record.

On June 3, 2013, the PCRA court entered a "Corrected Order" which decreed: "following a review of the pleadings, record, evidence and

_____

*(Footnote Continued)* ————————————

detective relative to the affidavit of probable cause and criminal complaint; (6) the court abused its discretion when it admitted hearsay testimony from another police detective; and (7) the court erred when it permitted the prosecution to impermissibly bolster the credibility of the victim. **See id.** at 852-853.

argument of counsel, the Petitioner's petition for post-conviction relief is DISMISSED." Order, 6/3/2013. A timely *pro se* appeal followed.[8]

When the appeal first appeared before this panel, we noted that the certified record did not contain a petition to withdraw or **Turner**/**Finley** "no merit" letter, and the trial court provided no reason in its opinion for its decision permitting counsel to withdraw. Because Stokes is an indigent, first-time PCRA petitioner, he is entitled to representation to assist him in litigating an appeal from the order denying his PCRA petition. **See** Pa.R.Crim.P. 904(C). Accordingly, we remanded the case to the PCRA court with direction to appoint counsel within 30 days. **See Commonwealth v. Stokes**, 1837 EDA 2013 (unpublished memorandum at 5) (Pa. Super. May 9, 2014).

The court complied with our directive, and, on July 22, 2014, newly appointed counsel filed an application to withdraw and accompanying **Turner**/**Finley** "no merit" letter. Although the Commonwealth was granted an extension of time to file a responsive brief, it failed to do so by the date mandated by this Court. **See** Order, 9/2/2014 (granting extension of time to file appellee brief until October 20, 2014). Accordingly, the appeal is now ready for our review.

_____

[8] Although not directed to do so by the PCRA court, Stokes, on July 9, 2013, filed a *pro se* concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

However, prior to addressing the merits of the appeal, we must first consider whether counsel has fulfilled the procedural requirements for withdrawal as outlined in **Turner**/**Finley**:

Counsel petitioning to withdraw from PCRA representation must … review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw. Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

* * *

[W]here counsel submits a petition and no-merit letter that … satisfy the technical demands of **Turner**/**Finley**, the court — trial court or this Court — must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).

Here, counsel has complied with the procedural aspects of **Turner**/**Finley** by filing a "no merit" letter, providing Stokes with a copy of that letter and the petition to withdraw, and advising Stokes of his right to proceed *pro se* or with private counsel. **See** Motion Seeking Permission to Withdraw as Counsel, 7/22/2014. Therefore, we proceed to a consideration

of whether the PCRA court erred in dismissing the petition.[9] ***See Doty, supra***.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted).

Where, as here, the only claims raised on appeal challenge the effectiveness of counsel, our review is well-settled:

> We begin our analysis of ineffectiveness claims with the presumption that { "pageset": "S21 counsel is effective. To prevail on his ineffectiveness claims, Appellant must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has { "pageset": "Sdc arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) Appellant suffered prejudice because of counsel's action or inaction. With regard to the second, *i.e.*, the "reasonable basis" prong, we will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." To establish the third, *i.e.*, the prejudice prong, Appellant must show that there is a reasonable

---

[9] Stokes has not filed a response to counsel's "no-merit" letter.

probability that the outcome of the proceedings would have been different but for counsel's action or inaction.

***Commonwealth v. Spotz***, 18 A.3d 244, 259-260 (Pa. 2011) (internal citations omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." ***Commonwealth v. Keaton***, 45 A.3d 1050, 1061 (Pa. 2012) (citations omitted).

The first issue addressed in the "no-merit" letter asserts trial counsel's ineffectiveness for failing to object when the trial court permitted the jury to review M.L.'s statement to police during its deliberations, but not the transcript from M.L.'s preliminary hearing testimony.

The determination of whether a trial exhibit should be permitted to go out with the jury during deliberations, "is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." ***Commonwealth v. Parker***, ___ A.3d ___, 2014 PA Super 253, *6 (Pa. Super. Nov. 6, 2014) (quotation omitted). "Our courts have rarely found that materials given to juries during deliberations constitute reversible error." ***Commonwealth v. Barnett***, 50 A.3d 176, 194 (Pa. Super. 2012), *appeal denied*, 63 A.3d 772 (Pa. 2013)

This claim arose from the following circumstances. During its deliberations, the jury sent the following note to the trial court:

> Could we ask you to repeat your instructions on aggravated assault, attempted murder, use of the complainant victim's original testimony from preliminary hearing and statement to detective? Can we see these statements from the victim?

N.T., 2/26/2010, at 4. Stokes's counsel objected to sending any of the victim's prior statements or testimony to the jury, arguing "the jury is going to have to rely on their memory only." *Id.* at 6-7. However, after determining that M.L.'s entire police statement was read to the jury and moved into evidence, the trial court decided to allow the jury to review the statement during its deliberations. *Id.* at 17-18. However, the trial court did not to allow the jury to review M.L.'s testimony during Stokes's preliminary hearing because the entire hearing transcript was not read to the jury during trial. *Id.* at 18. Rather, the trial court instructed the jury as follows:

> As far as the preliminary hearing notes, I cannot send that back with you. In addition, in order to parse out what was actually placed in the record from the notes, we would have to go through a lot of testimony, and I think that here we run into a danger of confusing more of the issue than we might be answering.
>
> So what I'm going to ask the foreperson is if you can identify a particular area of questioning in regard to the preliminary hearing testimony and write that down for me, I can attempt to answer it for you.

*Id.* at 20. The jury did not return with any further questions before delivering its verdict.

Based upon the foregoing, we find Stokes was not prejudiced by counsel's failure to object to the court's ruling. The trial court soundly declined to allow the entire preliminary hearing transcript to go out with the jury because the entire transcript was not admitted into evidence. Furthermore, the court provided the jury with the opportunity to return with

a specific question regarding M.L.'s preliminary hearing testimony. However, the jury declined to do so. Moreover, as the PCRA court explained in its opinion, "permitting the jury to read through the preliminary hearing transcript hardly would have altered the outcome of [Stokes's] trial" since M.L.'s testimony "only inculpated" Stokes. PCRA Court Opinion, 8/1/2013, at 12. Based upon our review of the preliminary hearing transcript, we agree. Therefore, Stokes has failed to demonstrate he was prejudiced by the trial court's ruling, and, accordingly, he is entitled to no relief on this claim. **See Spotz**, **supra**.

The next ineffectiveness claim raised in the "no-merit" letter challenges trial counsel's failure to object to M.L.'s hearsay testimony that "somebody" told him the shooter's name was "Nafis." **See** N.T., 2/23/2010, at 76, 86. One of the investigating detectives testified that M.L. recognized the assailant from the street, and learned his name after calling someone and asking that person "what's the name of that boy on the street … that's always trying to mess with my sister." N.T., 2/24/2010, at 108.

A statement is hearsay if it was made while the declarant was not "testifying at the current trial or hearing" and it was offered "in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. Although M.L. learned the name of the shooter from someone who did not testify at trial, that fact was not offered to prove that the shooter was, indeed, Stokes. Rather, as the PCRA court noted in its opinion, the testimony was offered "to explain how the victim came to know [Stokes's]

name and to offer it to police." PCRA Court Opinion, 8/1/2013, at 12. As there was no basis for a hearsay objection, we will not find trial counsel ineffective for failing to assert a meritless objection. ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1256 (Pa. Super. 2014). Moreover, M.L. identified Stokes as the shooter both in a photograph provided by police shortly after the shooting, and during the preliminary hearing. Therefore, Stokes cannot demonstrate he was prejudiced by counsel's failure to object to M.L.'s testimony that he learned Stokes's name from someone else. ***Spotz***, ***supra***.

Lastly, the "no-merit" letter asserts trial counsel's ineffectiveness for failing to object to testimony from a Commonwealth witness that improperly bolstered credibility of the victim, M.L. Again, we conclude no relief is warranted.

This claim arose from the following circumstances. As noted above, M.L.'s trial testimony differed from his testimony at Stokes's preliminary hearing. Indeed, at trial, M.L. stated that all of the gunmen wore masks and he could not identify Stokes as one of the people who shot at him. N.T., 2/23/2010, at 62, 75. When confronted with his prior testimony, M.L. claimed he did not remember testifying at Stokes's preliminary hearing. ***Id.*** at 70-72, 94-95. Therefore, the Commonwealth called Assistant District Attorney (ADA) Joseph McGlynn who represented the Commonwealth at Stokes's preliminary hearing. ADA McGlynn confirmed M.L. answered the questions that were reflected in the transcript from the preliminary hearing.

- 12 -

Of particular significance, ADA McGlynn testified that when M.L. was asked,

"Who put the gun up," M.L. responded, "The boy right here in the seat" and

pointed to Stokes. N.T., 2/24/2010, at 90. Thereafter, the trial prosecutor

asked ADA McGlynn to describe M.L.'s demeanor at the preliminary hearing.

The following exchange took place:

> [ADA McGlynn:] Well, I would say this – I mean, I don't think
> my recollection is that he wasn't necessarily one way or another.
> He – when I interacted with him, he wasn't necessarily friendly.
> I know that he had a family member with him, but he was
> answering my questions. He was not hostile and he wasn't
> warm and fuzzy. He just really answered my questions.
>
> Q. When the judge asked him questions, was he able to respond
> to the judge's questions?
>
> [ADA McGlynn:] Absolutely.
>
> Q. Was he able to respond in a non-hostile way?
>
> [ADA McGlynn:] Absolutely. Yes, his demeanor on the stand
> was similar to when he talked to me when he was off the stand.
> That was just I guess the facts.
>
> Q. Was there any hesitation in the answers that he gave to you
> or to the judge?
>
> [ADA McGlynn:] Not at all.

*Id.* at 92-93. Stokes argues this testimony constituted impermissibly

bolstering of the Commonwealth's primary witness.

"It is well settled that as long as a prosecutor does not assert his

personal opinions, he or she may, within reasonable limits, comment on the

credibility of a Commonwealth witness." ***Commonwealth v. Simmons***,

662 A.2d 621, 639 (Pa. 1995) (citation omitted). Moreover, an assistant

district attorney who handled an earlier phase of a prosecution may testify in a later phase of a trial so long as the testimony does not "improperly bolster a witness's credibility in the eyes of the jury," by either placing "the prestige of the government behind the witness by personal assurances of the witness's veracity[,]" or indicating "that information which is not before the jury supports the witnesses' testimony." ***Commonwealth v. Randall***, 758 A.2d 669, 676 (Pa. Super. 2000) (citations omitted), *appeal denied*, 764 A.2d 1067 (Pa. 2000).

This Court's decision in ***Randall*** is instructive. In that case, the Commonwealth's key witness testified more favorably for the Commonwealth at trial than he had at the preliminary hearing. He explained that he had not told the "whole truth" earlier because he was scared. ***Id.*** at 676-677. After defense counsel cross-examined the witness with his preliminary hearing testimony, the Commonwealth was permitted to call the ADA who handled the preliminary hearing "for the very narrow purpose of establishing the demeanor of [the witness] at the preliminary hearing, namely whether or not he was scared." ***Id.*** at 677. On appeal, this Court found no abuse of discretion on the part of the trial court in permitting this testimony. We explained:

> [The ADA] did not at any time express a belief as to whether he thought [the witness] was telling the truth when he testified or that he thought [the witness] to be a credible and accurate witness. Consequently, [the ADA] was in no way offering his personal opinion whatsoever as to [the witness's] credibility as a witness or otherwise vouching for [the witness] to the jury, actions which would have been manifestly improper. Neither did

- 14 -

> [the ADA] attempt to support [the witness's] prior testimony by referring to matters that were not already in evidence.

*Id.* at 678.

The testimony of ADA McGlynn in the present case was similar to that of the ADA in *Randall*. Here, the victim testified less favorably **for the Commonwealth** during trial, than he had at the preliminary hearing. The Commonwealth called ADA McGlynn to describe victim's demeanor during the preliminary hearing testimony, particularly whether the victim hesitated when identifying of Stokes as one of the shooters. Notably, ADA McGlynn did not give his **personal opinion** of whether the victim's prior testimony was truthful, nor did he refer to matters not in evidence. Accordingly, we agree with the PCRA court that this issue has no arguable merit.

As mandated by law, we have independently reviewed the record and agree with counsel that the current appeal has no merit.[10] **See Doty**,

_____

[10] We note that the five-year mandatory minimum sentencing provision in 42 Pa.C.S. § 9712, imposed in the present case based upon the trial court's determination that Stokes committed a crime of violence while visibly possessing a firearm, has been found to be unconstitutional in light of the United States Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (U.S. 2013). *See Commonwealth v. Valentine*, ____ A.3d ____, 2014 PA Super 220 (Pa. Super. October 3, 2014). However, an *en banc* panel of this Court in *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), determined that the *Alleyne* decision had only limited retroactivity, that is, it applied only to criminal cases that were still pending on direct review at the time it was filed. *Id.* at 90. In the present case, Stokes's judgment of sentence became final on December 1, 2011, when this Court affirmed his sentence on direct appeal. Because *Alleyne* was not decided until June 17, 2013, it does not provide Stokes with the opportunity for relief.

*(Footnote Continued Next Page)*

*supra*, 48 A.3d at 457. Therefore, we grant counsel's petition to withdraw and affirm the order dismissing Stokes's petition for PCRA relief.

Order affirmed. Application for leave to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014

*(Footnote Continued)*