752 A.2d 871

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Nathan SCOTT, Appellant.**

Supreme Court of Pennsylvania.

Argued May 2, 2000.

Decided June 19, 2000.

Reargument Denied Aug. 25, 2000.

**8.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor.

620

Henry S. Hilles, III, Norristown, for Nathan Scott.

Bruce Castor, Patricia E. Coonahan, Norristown, for Commonwealth.

Robert A Graci, Harrisburg, for Office of Atty. General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

Following a bench trial, Appellant Nathan Scott was convicted of first-degree murder and related offenses [1] on September 16, 1998. On September 18, 1998, following a penalty phase hearing, the trial court determined that the one aggravating circumstance [2] it found outweighed the two mitigating circumstances [3] it found and, therefore, imposed a sentence of death. Appellant filed post-trial motions, which the trial court denied. The instant appeal followed.[4]

Though Appellant does not challenge the sufficiency of the evidence, this Court is required to independently review the record to determine whether there is sufficient evidence to sustain the verdict of first-degree murder in all capital cases. *Commonwealth v. Mikell,* 556 Pa. 509, 514–16, 729 A.2d 566, 569 (1999). In conducting this review, we must view the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, and determine whether the fact-finder could find every element of the crime beyond a reasonable doubt.

1. The other offenses Appellant was found guilty of were: robbery, theft by receiving stolen property, four counts of burglary and unsworn falsification to authorities.

2. The aggravating circumstance was that the killing was committed while in the perpetration of a felony. *See* 42 Pa.C.S. § 9711(d)(6).

3. The two mitigating circumstances were that (1) Appellant had no significant history of felony convictions, 42 Pa.C.S. § 9711(e)(1), and (2) Appellant had some drug and alcchol dependence and some mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(8).

4. Pursuant to 42 Pa.C.S. § 9711(h)(1), the trial court's imposition of a death sentence is subject to automatic review by this Court. 42 Pa.C.S. § 9711(h)(1); *see also* 42 Pa.C.S. § 722(4).

*Commonwealth v. Gibson,* 553 Pa. 648, 660–61, 720 A.2d 473, 479 (1998). Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that a human being was unlawfully killed; that the defendant did the killing; that the defendant acted with a specific intent to kill; and that the killing was done with deliberation. 18 Pa.C.S. § 2502(a),(d); *Commonwealth v. Fletcher,* 561 Pa. 266, 750 A.2d 261, 267 (2000). Specific intent may be proven by circumstantial evidence and may be inferred by the use of a deadly weapon on a vital part of the body.[5] *Commonwealth v. Puksar,* 559 Pa. 358, 365, 740 A.2d 219, 223 (Pa.1999).

With these standards in mind, the record below establishes that on February 22, 1998, Appellant burglarized Joan DeMarco's dance studio, stealing two portable phones and some stereo equipment. During the burglary, Appellant looked in the refrigerator for something to eat. At that point, Ms. DeMarco walked into the dance studio and saw Appellant. She screamed and tried to escape, but Appellant prevented her from leaving, and subsequently tied her up with rope and duct tape. Appellant then hit Ms. DeMarco over the head with a five-pound dumbbell, killing her.

A few days later, police went to Appellant's place of employment and asked if they could speak with him about Joan DeMarco's murder. Appellant agreed and accompanied the police to the station. Eventually, Appellant confessed his involvement in Ms. DeMarco's murder to the police, stating that he did not mean to kill her, but that she surprised him when she walked into her studio. The police were also able to positively identify Appellant's fingerprints and palm prints at the scene of the crime. Viewing the foregoing in the light most favorable to the Commonwealth, the evidence was clearly

---

5. "Deadly weapon" is defined in the Crimes Code as:

 Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

 18 Pa.C.S. § 2301.

sufficient for the trial court to have found each element of first-degree murder beyond a reasonable doubt.

On appeal to this Court, Appellant first argues that the trial court erred in denying his pre-trial motion to suppress his confession because it was obtained after a period of time in which he believes he was entitled to be rewarned of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[6] Appellant contends that the confession elicited from him was a direct result of the police detectives' unconstitutional failure to rewarn him of his rights and, therefore, should have been suppressed. This claim fails.

At approximately 10:30 a.m. on March 3, 1998, Detectives Jeffrey McCabe and Edmund Justice went to Appellant's workplace in order to interview him in connection with the murder of Joan DeMarco. The detectives advised Appellant that they were investigating Ms. DeMarco's murder and he agreed to go with the detectives and to be interviewed at the police station. At 10:57 a.m., the detectives began to take Appellant's statement, in which he denied any involvement in Ms. DeMarco's murder. After stopping for a short break at 12:35 p.m., the detectives resumed taking Appellant's statement at 12:50 p.m. and concluded the conversation at 1:05 p.m. At that point, Detective Justice asked for Appellant's consent to have his fingerprints taken and Appellant consented. Appellant was then instructed to review his non-incriminating statement and make corrections. The corrections were made from 1:25 p.m. until 1:37 p.m.

At 2:00 p.m., Appellant was advised of his constitutional rights and signed a form indicating that he understood his

6. Initially, we note that when reviewing the ruling of a suppression court, we are limited to determining whether the record supports the court's findings of fact. *In the Interest of D.M.*, 560 Pa. 166, 743 A.2d 422, 424 (1999) (citation omitted). Where the defendant is appealing, as in the instant case, we consider the evidence presented by the Commonwealth and only that portion of the evidence presented by the defense which remains uncontradicted. *Id.* Where the record supports the findings of the suppression court, we may only reverse if the court erred in reaching its legal conclusions based on the facts. *Id.*

rights, but that he was nevertheless willing to speak to the detectives. Approximately five minutes later, Appellant signed a permission form to have his finger and palm prints taken and he was then printed. At about 2:40 p.m., Appellant was given something to eat. During this time, Detective Justice told Appellant that he was not telling the truth in his statement because surveillance indicated that Appellant did not live in the house he had told the detectives he lived in. The detectives then informed Appellant that they had a reasonable belief that he was involved in Ms. DeMarco's murder. Appellant did not respond, but placed his head down on the table. At 3:50 p.m., Appellant was advised that his palm print was identified as being the same as a latent palm print from the interior wall of the burglarized building, and he was placed under arrest for burglary. At 4:30 p.m., Appellant made his first incriminating statement and confessed to his involvement in the burglary. From about 5:11 p.m. until 7:30 p.m., Appellant made several unsolicited inculpatory statements regarding his involvement in the murder.

■ Appellant argues that although he was given *Miranda* warnings at 2:00 p.m., he should have been rewarned of his constitutional rights before his first incriminating statement was given at 4:30 p.m. We disagree.

■ This Court has never created a prophylactic rule that a suspect must be rewarned of his constitutional rights every time a custodial interrogation is renewed. *Commonwealth v. Bennett*, 445 Pa. 8, 15, 282 A.2d 276, 279 (1971). Rather, we view the totality of the circumstances in each case to determine whether repeated warnings are necessary where the initial warnings have become stale or remote. *Id.* Factors that are relevant to such an inquiry are:

> [T]he length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are

materially different from other statements that may have been made at the time of the warnings.

*Id.* These criteria, though not mandatory, guide us in determining whether there has been a "clear continuity of interrogation." *See Commonwealth v. Hoss,* 445 Pa. 98, 112, 283 A.2d 58, 66 (1971).

This Court has had ample opportunity to apply the *Bennett* factors in order to delineate what constitutes a "clear continuity of interrogation." *See Commonwealth v. Jones,* 478 Pa. 172, 178, 386 A.2d 495, 498 (1978) (warnings not stale when incriminating statement given three hours after warnings, warnings were given in the same room and same warning officers conducted the interview); *Commonwealth v. Gray,* 473 Pa. 424, 432, 374 A.2d 1285, 1289 (1977) (warnings not stale when given a little over two hours before incriminating statement, warnings were given in the same room and different officers conducted the interview); *Commonwealth v. Bennett,* 445 Pa. 8, 15–16, 282 A.2d 276, 280 (1971) (warnings not stale where given just under five hours before interrogation, defendant was moved a distance of a few miles, and the statement was given to an officer other than the warning officer); *Commonwealth v. Ferguson,* 444 Pa. 478, 481, 282 A.2d 378, 379–80 (1971) (rewarning not necessary when warnings were given seven and one-half hours and three hours before interrogation and in the same room, but while different officer conducted the interrogation with warning officer present). *But see Commonwealth v. Wideman,* 460 Pa. 699, 708–09, 334 A.2d 594, 599 (1975) (warnings were stale when given twelve hours before incriminating statement was elicited, defendant was moved to different rooms and the interview was conducted by different officers); *Commonwealth v. Riggins,* 451 Pa. 519, 527–28, 304 A.2d 473, 478 (1973) (defendant should have been rewarned of his constitutional rights where statement was elicited seventeen sleepless hours after initial warnings were given, warnings were given in car and confession was given in a room in the police administration building and different officers gave the warning).

With the *Bennett* factors in mind, we find that there was a clear continuity of interrogation in the instant case and thus, that the detectives were not required to rewarn Appellant of his rights. Appellant was read his rights two and one-half hours before he gave his first incriminating statement. Immediately after his rights were read, he signed a waiver form. During the period of time before his first incriminating statement, there were only momentary lapses in the interview process to allow Appellant time to take short breaks. Appellant confessed in the same room where he was read his rights. Though Appellant confessed to a different officer than the one who had previously read him · his rights, we believe this solitary factor does not compel a finding that the officers were required to rewarn Appellant of his rights. It cannot be said that Appellant was not aware of his rights a mere two and one-half hours after he heard, acknowledged and waived them. As this Court has previously stated, "where there is a time lapse of several hours, the accused is not moved, and there is a *clear continuity of interrogation* interrupted only by a lapse of time, there is no need for repeated warnings before the second interrogation." *Commonwealth v. Hoss*, 445 Pa. 98, 112, 283 A.2d 58, 66 (1971) (emphasis added). This is exactly what occurred here.

In support of his argument that his statements must be suppressed, Appellant relies on this Court's holding in *Commonwealth v. Dixon*, 475 Pa. 365, 380 A.2d 765 (1977). *Dixon*, however, is readily distinguishable. In *Dixon*, the defendant was warned of his rights, which he then waived. The defendant denied any involvement in the crime. About three hours after his initial warnings, the defendant was moved to the polygraph testing room where the polygraph operator told him that he "must tell if he knew something about the homicide in order for the test to be conducted." *Id.* at 372, 380 A.2d at 768. In response, the defendant made his first incriminating statement, which this Court later held to be inadmissible. Unlike the instant case, *Dixon* involved a polygraph test, which was clearly an important factor in this Court's decision to suppress the statement. The polygraph

test presented the potential of undue influence in coercing the defendant to answer a certain way and to make incriminating statements. This element of possible undue influence stemming from the polygraph test simply was not present here. Thus, we find Appellant's reliance on *Dixon* to be misplaced. Instead, based on the factors set forth in *Bennett*, we find that there was a clear continuity of interrogation and, therefore, that Appellant was not entitled to be rewarned of his constitutional rights. Accordingly, we agree with the trial court that there was no need to suppress Appellant's statements.

In his second claim of error, Appellant argues that his trial counsel was ineffective for failing to procure alleged records from drug treatment facilities where Appellant received treatment and for failing to introduce those records as mitigation at his penalty phase hearing. We disagree.

To establish a claim of ineffective assistance of counsel, an appellant must show that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Douglas*, 558 Pa. 412, 432, 737 A.2d 1188, 1199 (1999). Counsel is presumed to have rendered effective assistance and an appellant has the burden of proving otherwise. *Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 343 (2000).

Here, Appellant has failed to produce any evidence that the drug treatment facility records he claims counsel should have introduced as mitigation even exist, much less what those records contain or how they would lend further support to his claim that he sought treatment for his drug dependency.[7] *See* Appellant's Brief at 17 ("Do these records

7. We note that counsel did present evidence regarding Appellant's drug abuse treatment. Both a forensic psychologist and Appellant's father testified to Appellant's past drug treatment. N.T., 9/18/98, at 93, 166. After hearing this evidence, the trial court found Appellant's alcohol or drug dependency to be a mitigating circumstance under 42 Pa.C.S. § 9711(e)(8), the "catch-all" mitigating circumstance. *See* N.T.,

even exist? ... Did trial counsel try to obtain them? Was Appellant prejudiced by counsel's [possible failure to obtain such records]?"). Given Appellant's complete failure to meet his burden of proving counsel's ineffectiveness, Appellant's claim necessarily fails. *See Commonwealth v. Crawley,* 541 Pa. 408, 417, 663 A.2d 676, 680 (1995) (appellant failed to carry burden of proving claim that counsel was ineffective for failing to present evidence of his work history as mitigation at penalty phase hearing when appellant failed to supply any evidence of that work history).[8]

 Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court must affirm a sentence of death unless it finds that: "(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d)." 42 Pa.C.S. § 9711(h)(3). Here, the evidence was clearly sufficient to support the aggravating circumstance found by the trial court, "that is, that the [Appellant] committed a killing while in the perpetration of a felony, actually in this case, two felonies." N.T., 9/18/98, at 198; 42 Pa.C.S. § 9711(d)(6) (defendant committed killing while in the perpetration of a felony).[9] Moreover, after reviewing the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor.

9/18/98, at 198. Thus, Appellant has also failed to show that he suffered any prejudice from his counsel's failure to introduce alleged drug treatment records with unknown contents in support of a mitigating circumstance already found by the trial court.

8. Appellant claims that, at the very least, there should be a remand for an evidentiary hearing to determine whether counsel was ineffective for failing to procure the records, should they exist. An evidentiary hearing, however, is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness. *See Kitrell v. Dakota,* 373 Pa.Super. 66, 74, 540 A.2d 301, 305 (Pa.Super.1988) (remand for evidentiary hearing is not a discovery tool wherein counsel may conduct investigation for support for vague allegations of ineffectiveness).

9. Here, Appellant murdered Ms. DeMarco during the perpetration of both a burglary and a robbery, for which he was also convicted.

*See* 42 Pa.C.S. § 9711(h)(3).[10] Rather, it was based upon evidence properly admitted at trial.

Accordingly, we affirm the verdict and sentence of death.[11]

10. It should be noted that proportionality review is not required in this case because Appellant's sentence of death was imposed on September 18, 1998, after the Act of June 15, 1997, No. 28, § 1, which removed the proportionality review from 42 Pa.C.S. § 9711(h), came into effect. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426, 439 (1997) (provisions of Act 28 removing proportionality review from § 9711(h) do not apply retroactively to death sentences imposed prior to June 25, 1997).

11. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).