J-S34005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON J. MORRISON, | |
| Appellant | No. 1660 MDA 2014 |

Appeal from the Judgment of Sentence May 21, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001792-2012

BEFORE:  BOWES, OTT and STABILE, JJ.

MEMORANDUM BY BOWES, J.:                          **FILED JUNE 22, 2015**

Aaron J. Morrison appeals from the judgment of sentence of three and one-half to seven years imprisonment followed by three years probation. The court imposed that sentence after a jury convicted Appellant of kidnapping, false imprisonment, terroristic threats, and simple assault, and the trial judge thereafter convicted him of the summary offense of harassment.  We affirm.

On September 25, 2012, after previous unsuccessful attempts, the victim, Keshia Trimble, terminated a romantic relationship with Appellant. The following morning, September 26, 2012, Appellant telephoned her and became enraged after she ended the call to get ready for work.  Thereafter, Appellant made 189 telephone calls to the victim between 8:15 a.m. and

10:35 a.m. During this same period, Appellant sent her threatening text messages. Appellant told the victim that he was going to steal the money from her bank account and that he would report Ms. Trimble to the local children and youth services and accuse her of drug use and owning guns so that she would lose custody of her child.

In another text message, Appellant said that he was going to the victim's work and place her in his car and that her co-workers would not see her, her son would not see her, and that no one would hear from her. About five minutes after this menacing text, Ms. Trimble arrived at work. Appellant's vehicle was in the parking lot, and Appellant grabbed her and forced her into his car, telling her that he had duct tape and knives. He then forced her to telephone work and say that she would not be coming in.

Appellant drove to a secluded location about fifteen minutes and five miles away from Ms. Trimble's place of work. He took a knife and started to threaten to harm himself. Appellant briefly left his vehicle, and the victim quickly managed to telephone police and quietly inform them that she needed help. During these events, Ms. Trimble was afraid that she was going to be killed.

In the meantime, at around 11:00 a.m. on September 26, 2012, Marlee Roles of Hoopla's Family Fun & Grill ("Hoopla's"), where Ms. Trimble was employed, telephoned police and told the dispatcher that she believed that one of her employees was in trouble. Muncy Township Police Chief

Christopher McKibben arrived to investigate. Ms. Roles explained that Ms. Trimble did not sound normal when she called off work. Ms. Roles also said that another employee saw Ms. Trimble arrive at the parking lot at Hoopla's and that her car, with the keys still in the ignition, was still there.

Chief McKibben ascertained that the victim's car engine was still warm, as if it had been driven recently. He was not able to locate Ms. Trimble at Hoopla's and unsuccessfully searched for her at a nearby vacant home. One of the Hoopla's employees then told him that the victim had a protection from abuse order ("PFA") against an ex-boyfriend. While inside Hoopla's, Chief McKibben received a dispatch telling him that Ms. Trimble had telephoned police asking for help.

The cell phone signal was triangulated, and Chief McKibben was able to ascertain that it was located on Peter Gray Road, which has no outlet, is isolated, and is overgrown. Chief McKibben, who was alone, immediately traveled to the entrance of the mile-long road and saw Appellant's car backed into the brush. As Chief McKibben approached Appellant's car, he observed the victim in the backseat, and she appeared upset.

To protect himself and the victim and investigate the situation in safety, Chief McKibben pointed his gun at Appellant, ordered him from the car and onto the ground, and handcuffed him. Ms. Trimble was flushed, crying, and disheveled, and she told Chief McKibben that Appellant kidnapped her from Hoopla's parking lot.

After hearing this account, Chief McKibben arrested Appellant at 11:30 a.m., and gave him **Miranda** warnings. At that time, Appellant admitted that he had kidnapped the victim but he denied that he intended to harm her. Chief McKibben then drove Appellant to the police station, where Appellant was asked but refused to make a written statement. Questioning ceased. Appellant was seated in the chair of Chief McKibben's office being processed when another police officer arrived. It was 1:30 p.m. that same day. The police officer entered Chief McKibben's office and asked Appellant if he had been caught stealing. Chief McKibbens told Appellant to tell the other officer what he had done, and Appellant said that he had kidnapped a girl.

After Appellant was charged, he moved to suppress the two admissions that he made to police. After that motion was denied, he proceeded to trial where he was convicted of the above-described charges. In this appeal that followed imposition of judgment of sentence, Appellant raises five issues:[1]

> I. Did the Honorable Court err when it denied the motion to suppress the incriminating statements as fruit of an unlawful arrest when the Appellant was placed in handcuffs at gunpoint and not given proper **Miranda** warnings?

---

[1] Appellant's statement of issues involved references six issues, but Appellant withdrew the final one in the body of his brief. Appellant's brief at 21.

[II. The Honorable Court erred when it denied the motion to suppress the incriminating statements made at the police station after officers failed to renew the ***Miranda*** warnings.]

III. Did the Honorable Court err when it denied the motion for a new trial due to the failure of the Commonwealth to present sufficient evidence regarding the charge of kidnapping, namely that the Appellant did not unlawfully remove complainant for a substantial distance and did not intend to inflict bodily injury or terrorize the complainant when he made no threats or aggressive physical movements toward the complainant?

IV. Did the Honorable Court err in denying the motion for mistrial for a violation of Pa. R. Evid. § 404(b), when complainant testified on direct examination concerning prior bad acts by Appellant, namely that she testified that he had threatened to "slit her throat" on prior occasions?

V. Did the Honorable Court err in allowing the Commonwealth to cross-examine Appellant concerning irrelevant and prejudicial cellular text messages in violation of Pa. R. Evid. § 403?

Appellant's brief at 8-9, 15.[2]

Appellant's first two claims pertain to the denial of his motion to suppress. Our standard of review of a suppression court's denial of a suppression motion is settled:

_____

[2] In his statement of issues raised on appeal, Appellant inadvertently repeats issue one and outlines identical contentions as both issue one and issue two. However, in the body of his brief, Appellant clarifies that the first issue challenges the admissibility of his first statement, which was made at the scene of the crime, while his second issue relates to the admissibility of the second statement, which was made at the police station. These were the positions raised in the Pa.R.A.P. 1925(b) statement. We have corrected the typographical error on page eight in Appellant's brief by replacing it with the one presented in the body of Appellant's brief.

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Postie*, 110 A.3d 1034, 1039 (Pa.Super. 2015).

Appellant claims his crime-scene confession was the product of an unlawful arrest unsupported by probable cause. He first argues that he was arrested when placed on the ground and handcuffed. Appellant further asserts that Chief McKibben lacked probable cause to arrest him after the officer spoke with Ms. Trimble. The suppression court ruled that Chief McKibben had grounds to conduct an investigatory detention upon his arrival at the scene and that such an investigation was occurring when Appellant was first handcuffed.

We agree with this assessment. When Chief McKibben arrived at Peter Gray Road, he had the following facts at his disposal. He was told that the victim had a PFA against a former boyfriend, had arrived at work, and had disappeared. While Chief McKibben was investigating Ms. Trimble's disappearance, he was informed that she had called police asking for help. After finding the location of her cell phone, Chief McKibben saw the victim in Appellant's car, which was located in an isolated area, and she appeared

distraught. These circumstances gave Chief McKibben reasonable suspicion to believe that a crime may have been occurring and justified an investigatory detention. ***Commonwealth v. Davis***, 102 A.3d 996 (Pa.Super. 2014) (police can conduct investigation if they have reasonable suspicion that criminality is afoot and that test is an objective one determined by examining the totality of the circumstances).

Appellant maintains that Chief McKibben did not conduct an investigation upon his arrival but rather immediately arrested him because Appellant was ordered to lay down on the ground and was handcuffed. We cannot agree. Chief McKibben stated that, when he arrived at the crime scene, he did not place Appellant under arrest. He continued, "I put handcuffs on him to put him in custodial detention until I could figure out what was going on. I'm by myself." N.T., Suppression Hearing, 5/17/13, at 13. Chief McKibben explained that Appellant was handcuffed for the officer's safety. ***Id***. at 19. The mere fact that Appellant was handcuffed did not convert the investigation into an arrest. ***Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa.Super. 2005) ("[P]olice officers may handcuff individuals during an investigative detention.") Chief McKibben's actions were unassailable given his knowledge of the situation and his sole presence at the scene.

Appellant next claims that Chief McKibben did not have probable cause to arrest him after speaking with the victim since he did not have cause to believe that she was trustworthy.

> Probable cause to effectuate an arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense. In addressing the existence of probable cause, courts must focus on the circumstances as seen through the eyes of the trained police officer, taking into consideration that probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act.

*Commonwealth v. Thompson*, 93 A.3d 478, 486 (Pa.Super. 2014).

Herein, Chief McKibben said that the victim told him that Appellant "grabbed her from her place of employment, threw her in the back of the vehicle, locked the doors and took off towards Muncy with her." N.T. Suppression Hearing, 5/17/13, at 11. She also reported that Appellant made the following threat to her: "You're going to make me do something with this knife that I'm going to regret the rest of my life." *Id*.

We reject Appellant's position that there was no indication that Ms. Trimble was being truthful. Chief McKibben knew that Ms. Trimble arrived at work in her car, mysteriously reported off after coming to work, disappeared, and had a PFA against a former boyfriend. That officer also was aware that she had telephoned police asking for help. Her veracity was additionally bolstered by the evidence that the victim appeared distraught

when Chief McKibben arrived. *Id*. at 19 (Chief McKibben testifying that the victim appeared, "Very upset, face was flush, she had make-up running all over her face, clothes were disheveled."). Finally, Ms. Trimble was located in an isolated, wooded area with a man. Hence, we find that, after speaking with Ms. Trimble, Chief McKibben had probable cause to arrest Appellant for committing the crime of kidnapping. Since Appellant's arrest was supported by probable cause and he was given *Miranda* warnings before confessing, the suppression court properly refused to suppress Appellant's inculpatory remark at the scene of the crime.

Appellant's second position is that the suppression court's erred in refusing to suppress the statement that he made at the police station. Appellant avers that the *Miranda* warnings given to him at the scene were stale and should have been re-administered to him before he gave the second inculpatory remark.[3] As we noted in *Commonwealth v. Cohen*, 53 A.3d 882, 888 (Pa.Super. 2012) (citation omitted), when determining whether *Miranda* warnings are stale, we examine these factors:

---

[3] We note that Appellant does not suggest that he invoked his *Miranda* rights at any point and merely maintains that the first warnings were stale. Chief McKibben did not indicate either that Appellant said that he did not want to speak with police any longer or that Appellant requested a lawyer. Chief McKibben explained that, at the police station, Appellant merely refused to provide a written statement and that they began to talk about other matters. N.T. Suppression Hearing, 5/17/13, at 15.

The length of time between the warnings and the challenged interrogation, whether the interrogation was conducted at the same place where the warnings were given, whether the officer who gave the warnings also conducted the questioning, and whether the statements obtained are materially different from other statements that may have been made at the time of the warnings.

*Accord Commonwealth v. Scott*, 752 A.2d 871, 875 (Pa. 2000) ("This Court has never created a prophylactic rule that a suspect must be rewarned of his constitutional rights every time a custodial interrogation is renewed."); *see also Commonwealth v. Hill*, 104 A.3d 1220 (Pa. 2014) (case remanded for reconsideration under correct standards where we held that a pre-polygraph counseled waiver of *Miranda* rights did not apply to a police interrogation that followed conduct of polygraph). If the circumstances outlined above establish that there has been a clear continuity in the interrogation, no renewal of rights is required. *Scott*, *supra*.

In this case, Chief McKibben testified that he administered *Miranda* warnings to Appellant after placing him under arrest. That officer then asked, "Do you know why I'm here?" N.T. Suppression Hearing, 5/17/13, at 11. Appellant responded, "Yeah because I kidnapped her but I wasn't going to hurt her." *Id*. Thereafter, Appellant was transported to the police station. Once there, Appellant declined to give a written statement so Chief McKibben and Appellant started to talk about his family. Another officer arrived at 1:30 p.m., about two hours after the warnings were given. That officer asked Appellant whether he had been caught stealing because arrests

in that area generally were for retail theft. Chief McKibben then said, "Go ahead and tell him what you did," and Appellant said, "I kidnapped a girl." *Id*. at 16.

Herein, Chief McKibben disseminated the warnings at the scene and was the same officer who asked Appellant the question leading to the second admission. There was only a two-hour gap between the ***Miranda*** warnings and the second confession. Finally, the second statement was identical to the first one. Under the circumstances, the suppression court did not err in finding that there was a continuity in interrogation and that Appellant's ***Miranda*** warnings were not stale. ***Commonwealth v. Bennett***, 282 A.2d 276 (Pa. 1971) (applicable warnings were not stale when they were given less than five hours before second admission, second statement was not materially different from first one, defendant had been moved only a few miles, and officer who gave warnings was with officer who questioned defendant during the second interrogation).

Appellant's third issue is a sufficiency challenge to the kidnapping conviction. Our standard of review in this context is as follows:

> Whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa.Super. 2015).

A person is guilty of kidnapping if he, in relevant part, "unlawfully removes another a substantial distance under the circumstances from the place where he is found" with the intention "to terrorize the victim." 18 Pa.C.S. § 2901(a)(3). Appellant contends that there was no proof either that he removed the victim a substantial distance from Hoopla's or that he intended to terrorize her. As our Supreme Court noted,

> For purposes of the kidnapping statute, a substantial distance is not limited to a defined linear distance or a certain time period. The determination of whether the victim was moved a substantial distance is evaluated under the circumstances of the incident. Further, the guilt of an abductor cannot depend upon the fortuity of the distance he has transported his victim nor the length of time elapsed.

***Commonwealth v. Malloy***, 856 A.2d 767, 779 (Pa. 2004) (citations omitted).

In this case, Appellant was angry at the victim, forced her into his car, and drove her fifteen minutes and 5.2 miles away to a secluded, wooded area. Thus, there was sufficient evidence that Appellant transported her a substantial distance. ***Id***. (kidnapping occurred when victim was forced into vehicle and driven fifteen minutes and five point two miles from point of abduction to an isolated area of the city).

We also conclude that the following proof supports the jury's determination that Appellant's actions were undertaken to terrorize the victim. About five minutes before abducting her, Appellant told the victim that he was going to take her away and that no one from work would see her, her son would not see her, and no one would hear from her. He then forced her into the car and told her that he had knives and duct tape. He also said to Ms. Trimble that she was going to make him do something with the knife that he would regret. Finally, Appellant took the victim to an isolated, wooded area. The victim stated that she was afraid for her life. We thus reject Appellant's challenge to the sufficiency of the evidence supporting the kidnapping conviction.

Appellant's fourth averment is that the trial court improperly denied his request for a mistrial after the victim testified that, on a previous occasion, Appellant had threatened to slit her throat. We review the trial court's denial of a mistrial under an abuse of discretion standard. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). It is settled that "a trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id*. (citation omitted). Indeed the grant of a mistrial is "an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." *Id*. (citation

omitted). If a "trial court gives adequate cautionary instructions, declaration of a mistrial is not necessary." *Id*. (citation omitted).

Herein, the following exchange led to Appellant's request for a mistrial:

[District Attorney] Q.: Did [Appellant] say anything to you before Chief McKibben got there?

[Ms. Trimble] A.: No.

Q. Now you said that [Appellant] made it clear to you that he had knives and duct tape?

A. Yes.

Q. Did he tell you how may knives?

A. Um, I can't remember if he gave me a number, he just said he had knives.

Q. Were you scared that [Appellant] would use that knife on you, the one that you saw?

A. Yes.

Q. Why were you scared?

A. He has made threats previously about slitting my throat.

N.T. Trial, 2/25/14, at 32.

After Appellant objected, the district attorney explained that she "was not anticipating that answer. I had thought that she was going to say that she was scared because he had the knife in his hand and was using it[.]" *Id*. at 33. The court denied the mistrial on the basis that it was an "inadvertent comment by the victim and not planned to be brought out by the Commonwealth." *Id*. at 34. The court gave a curative instruction,

telling the jury to disregard the statement and to give it no weight or credibility. Since the mention of the prior bad act was revealed by the victim, was not intentionally elicited by the prosecution, was not exploited by the district attorney, and the trial court immediately gave a curative instruction, we conclude that the trial court did not abuse its discretion in denying the mistrial request. *Commonwealth v. Manley*, 985 A.2d 256 (Pa.Super. 2009).

Appellant's final complaint is that the trial court impermissibly allowed him to be cross-examined about the contents of text messages that he sent Ms. Trimble on September 15 and 16, 2012, within two weeks of the kidnapping. "It is well-settled that 'the scope of cross examination is a matter within the trial court's discretion and will not be disturbed by this Court absent an abuse of that discretion.'" *Commonwealth v. Kouma*, 53 A.3d 760, 768 (Pa.Super. 2012) (citation omitted).

In this case, Appellant maintained during his direct examination that he ended the romantic relationship with Ms. Trimble and that, as a result, she was suicidal. Appellant stated that the threatening text messages that he sent on the day of the kidnapping were intended to elicit a response from Ms. Trimble because he was worried that she would hurt herself. The trial court then permitted Appellant to be cross-examined with a text message that he sent Ms. Trimble on September 15, and in which Appellant said he was going for "anger management and I'm asking around for prices on a

therapist." N.T. Trial, 2/25/14, at 145. In addition, the trial court allowed Appellant to be asked about a text message that he sent on September 16 that, "All I do is hurt people. I'm so sorry. Keshia Trimble, I'll always be thinking of you and praying you give me another chance. I've learned my lesson and I've already scheduled some help for myself. I hope you will be on my side in the future." *Id*. at 146.

We conclude that the cross-examination was proper since the text messages directly contradicted Appellant's direct testimony that Ms. Trimble, rather than he, was the person who was emotionally unstable as well as Appellant's insistence that he, instead of Ms. Trimble, ended their relationship. The text messages impeached Appellant's testimony and were properly used during cross-examination. Hence, we reject Appellant's assertions on appeal and affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2015

- 16 -