J-S41029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :         PENNSYLVANIA
  :
          v.                 :
  :
  :
  :
ROYSCE HAYNES               :
  :
        Appellant         :   No. 3170 EDA 2017

Appeal from the PCRA Order August 24, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014368-2012,
CP-51-CR-0014369-2012

BEFORE:   GANTMAN, P.J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                 **FILED OCTOBER 10, 2018**

Appellant, Roysce Haynes, appeals from the order entered on August
24, 2017 in the Criminal Division of the Court of Common Pleas of Philadelphia
County that dismissed, without a hearing, his petition filed pursuant to the
Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously summarized the historical facts in this case as
follows:

> During the afternoon of September 10, 2012, Philadelphia
> Probation and Parole Officers Shondell Williams and Evan Moore–
> Mathis visited [Appellant].  As they approached his apartment,
> they saw him sitting on the steps outside the apartment entrance.
> He appeared stunned and was somewhat unresponsive to
> questions.  His head was lowered and when asked whether the
> police should be summoned, he said yes.  N.T. April 29, 2014, pp.
> 81–87.

---

\*   Former Justice specially assigned to the Superior Court.

Philadelphia Police Officer Jonathan Ransom was called to [a residence along] Chelton Avenue in the Germantown section of Philadelphia. There he encountered [Appellant], who told him that he had been in an argument with his girlfriend, that the argument had become physical, and that he had choked her. When Officer Ransom went inside [Appellant's] apartment, he saw the decedent, Atiya Perry, lying on the floor and bleeding from the head. She had no signs of life. Officer Ransom noticed a bloody towel lying on the floor near her head. *Id.* at 32–46.

Dr. Marlin Osbourne, Assistant Medical Examiner, performed the autopsy on the decedent and determined that her death was a homicide achieved by strangulation. [The decedent] also had small lacerations on her left cheek. Dr. Osbourne determined that based on the size of the fetus in her uterus, she had been pregnant for seven weeks at the time of her death. *Id.* at 113–124.

Detective Edward Tolliver took a statement from [Appellant] the day of the killing. In it, [Appellant] acknowledged killing the decedent. He said that the decedent had been hitting him with a closed fist on the side of his head and that she had tried to use pepper spray against him, and that he choked her. He also said that the decedent had told him that she was pregnant, but that he did not believe her. *Id.* at 139–157. Detective Tracey Byard searched the apartment in the immediate aftermath of the murder. He did not find any mace or pepper spray anywhere in the apartment. *Id.* at 189. Prenatal vitamins and magazines about pregnancy were found in the apartment. *Id.* at 68–69.

***Commonwealth v. Haynes***, 125 A.3d 800, 802 (Pa. Super. 2015), *appeal denied*, 140 A.3d 12 (Pa. 2016).

Appellant was arrested and charged with murder and murder of an unborn child on September 10, 2012. Following trial, a jury found Appellant guilty of third-degree murder for killing Atiya Perry and third-degree murder for the death of her unborn child. On July 1, 2014, the trial court imposed an aggregate sentence of 35 to 70 years' incarceration. Both Appellant and the Commonwealth appealed the judgment of sentence. On October 5, 2015, this

Court affirmed the judgment and our Supreme Court denied further review on June 1, 2016.

Appellant filed a *pro se* PCRA petition on September 29, 2016. Thereafter, appointed counsel filed an amended petition on May 10, 2017. On July 13, 2017, pursuant to Pa.R.Crim.P. 907, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not respond to the dismissal notice and the court denied the petition on August 24, 2017. This timely appeal followed.

Appellant raises a single question for our review:

Did the [PCRA c]ourt err when it dismissed [Appellant's] PCRA [p]etition without a [h]earing?

Appellant's Brief at 3.

We have carefully reviewed the certified record, the submissions of the parties, and the opinion of the PCRA court. Based upon our review, we conclude that Appellant's claim of ineffectiveness of trial counsel is meritless and that he failed to raise a genuine issue of fact that required an evidentiary hearing to resolve. We further find that the PCRA court has adequately and accurately addressed the issues raised by Appellant in the context of this appeal. For this reason, we adopt the PCRA court's opinion as our own and direct the parties to include a copy of that opinion with all future filings relating to our disposition of this appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/10/18</u>

RECEIVED

AUG 2 4 2017

PCRA Unit
CP Criminal Listings

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0014368-2012
                                  : CP-51-CR-0014369-2012

      v.                        :

                                        :

ROYSCE HAYNES                    :

                                        :

## ORDER AND OPINION

McDermott, J.                                         August 24, 2017

### Procedural History

On September 10, 2012, the Petitioner, Roysce Haynes, was arrested and charged with Murder and Abuse of a Corpse in CP-51-CR-0014368-2012, and Criminal Homicide of an Unborn Child in CP-51-CR-0014369-2012. On April 30, 2014, after a consolidated trial before this Court, a jury convicted the Petitioner of Third-Degree Murder in CP-51-CR-0014368-2012 and Criminal Homicide of an Unborn Child in CP-51-CR-0014369-2012. On July 1, 2014, this Court imposed a sentence of twenty to forty years imprisonment for Third-Degree Murder and a consecutive fifteen to thirty years for Criminal Homicide of an Unborn Child, for a total sentence of thirty-five to seventy years of imprisonment.

The Petitioner appealed and on October 5, 2015, the Superior Court affirmed his judgment of sentence. On June 1, 2016, the Pennsylvania Supreme Court denied the Petitioner's Petition for Allowance of Appeal.

CP-51-CR-0014368-2012 Comm. v Haynes, Roysce
Opinion

## APPENDIX – LOWER COURT OPINION

7994564781

On September 29, 2016, the Petitioner filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition, his first. On May 10, 2017, through appointed counsel, the Petitioner filed an Amended Petition. On July 12, 2017, the Commonwealth filed its response. On July 13, 2017, after independent review, this Court found the Petitioner's claims meritless and issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. The Petitioner did not respond to this Court's 907 Notice.

## Facts

On direct appeal, the Superior Court summarized the relevant facts as follows:

> During the afternoon of September 10, 2012, Philadelphia Probation and Parole Officers Shondell Williams and Evan Moore-Mathis visited [the Petitioner, Roysce Haynes]. As they approached his apartment, they saw him sitting on the steps outside the apartment entrance. He appeared stunned and was somewhat unresponsive to questions. His head was lowered and when asked whether the police should be summoned, he said yes.
>
> Philadelphia Police Officer Jonathan Ransom was called to 850 Chelton Avenue in the Germantown section of Philadelphia. There he encountered [the Petitioner], who told him that he had been in an argument with his girlfriend, that the argument had become physical, and that he had choked her. When Officer Ransom went inside [the Petitioner]'s apartment, he saw the decedent, Atiya Perry, lying on the floor and bleeding from the head. She had no signs of life. Officer Ransom noticed a bloody towel lying on the floor near her head.
>
> Dr. Marlin Osbourne, Assistant Medical Examiner, performed the autopsy on the decedent and determined that her death was a homicide achieved by strangulation. [The decedent] also had small lacerations on her left cheek. Dr. Osbourne determined that based on the size of the fetus in her uterus, she had been pregnant for seven weeks at the time of her death.
>
> Detective Edward Tolliver took a statement from [the Petitioner] the day of the killing. In it, [the Petitioner] acknowledged killing the decedent. He said that the decedent had been hitting him with a closed fist on the side of his head and that she had tried to use pepper spray against him, and that he choked her. He also said that the decedent had told him that she was pregnant, but that he did not believe her. Detective Tracey Byard searched the apartment in the immediate aftermath of the murder. He did not find any mace or

pepper spray anywhere in the apartment. Prenatal vitamins and magazines about pregnancy were found in the apartment.

*Commonwealth v. Haynes*, 125 A.3d 800, 802 (Pa. Super. 2015).

Discussion

The Petitioner raises a single issue for review, alleging that trial counsel was ineffective for failing to challenge the admissibility of his confession to police. Specifically, in his *pro se* petition, the Petitioner admits that officers read him his *Miranda* rights prior to taking his statement, but argues that *Miranda* was "employed illegally" and was part of an "accusatory ruse." Petitioner's *Pro Se* Petition at 6. The Petitioner further alleges that detectives "suggested that [he was] not getting an attorney." *Id.* Though the Petitioner merely claims that trial counsel was ineffective in his Amended Petition, he goes on to argue, contradictorily, in an attached Memorandum of Law[1] that "he was not given his *Miranda* warnings" and that he "wanted an attorney present at the time he was being questioned but no attorney was provided, thus rendering the statement something less than knowing, intelligent and voluntary." Petitioner's May 10, 2017 Memorandum of Law at 6.

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Bardo*, 105 A.3d 678, 684 (Pa. 2014); 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013) (*citing Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117 (Pa. 2012)).

To overcome the presumption, the Petitioner has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Supreme Court of

---

[1] The Petitioner titles his Memorandum of Law as a "Letter Brief."

3

Pennsylvania has applied the *Strickland* test by looking to three elements, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). If a claim fails under any necessary element of the *Strickland/Pierce* test, the court may proceed to that element first. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195–1196 (Pa. 2011). Counsel will not be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Rivera*, 108 A.3d 779, 789 (Pa. 2014) (*citing Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006)).

In his Memorandum of Law attached to his Amended Petition, the Petitioner argues that his statement confessing to strangling the decedent during a fight would have been suppressed, if challenged, because law enforcement authorities failed to *Mirandize* him and provide him with an attorney prior to the interrogation. The Petitioner argues that the additional evidence presented against him was weak, rendering trial counsel's failure to challenge highly prejudicial. When a petitioner asserts ineffective assistance of counsel based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to demonstrate ineffective assistance. *Commonwealth v. Watley*, 152 A.3d 1034, 1044 (Pa. Super. 2016) (*citing Commonwealth v. Metzger*, 441 A.2d 1225, 1228 (Pa Super. 1981)).

A waiver of *Miranda* rights is valid where the suspect is aware of the general nature of the transaction giving rise to the investigation. *Commonwealth v. Johnson*, 160 A.3d 127, 138 (Pa. 2017). A Petitioner is presumed competent to waive *Miranda* rights, and he bears the burden to prove incompetence by a preponderance of the evidence. *Commonwealth v. Watkins*, 108 A.3d 692, 703 (Pa. 2014). In deciding whether a confession was involuntary, courts must

4

determine whether the interrogation was so manipulative or coercive that it deprived the petitioner of his ability to make a free and unconstrained decision. *Commonwealth v. Philistin*, 53 A.3d 1, 15 (Pa. 2012) (*citing Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002)).

In his *pro se* petition, the Petitioner claims that the *Miranda* warning he received was too ambiguous to understand, and that during the course of the interview, police implied that he would not be able to communicate with an attorney. The Petitioner does not allege anything beyond this bald assertion. On July 13, 2017, during argument before this Court, the Petitioner, through counsel, stated that an evidentiary hearing was necessary so this Court could make a credibility determination between himself and the interrogating officer. N.T. 7/13/2017 at 4-5.

An evidentiary hearing is not meant to function as a fishing expedition for possible evidence that may support a claim of ineffectiveness. *Commonwealth v. Sneed*, 45 A.3d 1096, 1116 (Pa. 2012) (*citing Commonwealth v. Scott*, 752 A.2d 871, 877 n. 8 (Pa. 2000)). The fact that there is a possibility, however slim, that this Court could find the police interrogators statement incredible after an evidentiary hearing is not sufficient to satisfy his burden of proving ineffectiveness.

Although the Petitioner claims that the warnings were ambiguous, he fails to explain which part of his *Miranda* waiver was ambiguous or incomprehensible. The *Miranda* warnings contained in the standard police form, as read and signed by the Petitioner, meets the constitutional standards necessary to evidence the Petitioner's waiver of his rights. The form clearly and unequivocally explained that the Petitioner had the right to remain silent, the right to an attorney, and the right to stop the interrogation at any time. *See* Commonwealth's Trial Exhibit C-12. This evidence shows that the Petitioner elected to speak to detectives without an attorney present.

The evidence presented at trial indicates that the Petitioner was properly *Mirandized* and was aware of, but failed to invoke, his right to counsel. Detective Edward Tolliver interviewed the Petitioner on September 10, 2012 and was present when the Petitioner reviewed, answered, and signed a written *Miranda* waiver form. Tolliver testified that, on the *Miranda* waiver form, the Petitioner indicated that he knew of his right to remain silent, that he did not wish to express that right, that he did not want to speak to a lawyer despite his constitutional right to do so, and that he answered each question of his own free will, without any threats or promises having been made to him. N.T. 4/29/2014 at 142–149; *see* Commonwealth's Trial Exhibit C-12, attached as "Exhibit A." Detective Tolliver observed the Petitioner write his initials next to each question on the waiver form, sign each page of his statement, and attest that the facts set forth in his statement were true. *Id.* at 143–147. According to Detective Tolliver, the Petitioner willingly continued to communicate with detectives after being read his rights. *Id.* at 171–172.

The Amended Petition and its attached Memorandum of Law fail to develop these allegations further. Instead, the Petitioner claims that Detectives never gave the Petitioner *Miranda* warnings, despite the Petitioner's contrary assertion in his *pro se* petition. Further, while the Petitioner states that he wanted an attorney but was never provided one, he fails to explicitly assert that he ever invoked his right to an attorney, or that police detectives denied him access to an attorney after such and invocation. These bald, contradictory claims fail to sufficiently raise the issue that detectives did not provide proper *Miranda* warnings or that the Petitioner invoked, and was denied, his right to counsel. The Petitioner's claim is too underdeveloped to warrant an evidentiary hearing.

The Petitioner cannot demonstrate prejudice, as even if this Court had suppressed his police statement, the evidence contained therein would have been presented to the jury. The

6

contents of the Petitioner's police statement were corroborated by Officer Ransom's testimony, which recounted the Petitioner's spontaneous, non-custodial admission that he choked the decedent after an argument between the two became physical. N.T. 4/29/2014 at 36. Officer Ransom discovered the decedent's body inside the Petitioner's home. *Id.* at 37. Officer Ransom's testimony alone was sufficient to establish that the Petitioner strangled the decedent to death. Finally, trial counsel had a strategic reason to employ the Petitioner's statement, as it provided the foundation for his manslaughter defense, which the jury ultimately rejected. *Id.* at 199–200; N.T. 4/30/2014 at 28, 31–32, 36–37, 41–43.

The Petitioner's claim is meritless.

For the foregoing reasons, the petition is hereby DISMISSED. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

Barbara A. McDermott, J.

7